# *Annual Report to the Florida Legislature For Calendar Year 2023*

*By the State of Florida Commission on Ethics*

# Table of Contents

MESSAGE FROM THE CHAIR ........................................ii

2023 COMMISSION MEMBERS ........................................ 1

INTRODUCTION & HISTORY ........................................ 2

ORGANIZATION ........................................ 4

Ethics Commission Staff ........................................ 4

FISCAL REPORT ........................................ 8

OPERATIONS ........................................ 9

Complaints ........................................ 9

Executive Branch Lobbyist Registration ........................................ 13

Advisory Opinions ........................................ 14

Training and Education ........................................ 15

Financial Disclosure ........................................ 17

LEGISLATIVE RECOMMENDATIONS ........................................ 23

# *Message from the Chair*

This year, change has been nearly the only constant for the Florida Commission on Ethics. Thanks to a relentless staff and enthusiastic membership, the Commission has not missed a beat. For that, I am deeply grateful.

The Commission's year began with the roll-out of electronic filing for approximately 2,600 Form 6 filers—a formidable undertaking executed with precision, which generated praise from filers around the State. But more change at an equally daunting scale was still to come: beginning January 1, 2024, all Form 6 and Form 1 filers are required to file electronically, and the universe of Form 6 filers is also expanding dramatically, from approximately 2,600 to 5,200. The past year has seen thousands of hours of staff time dedicated to acquiring the infrastructure necessary to seamlessly implement these changes with as little disruption to filers as possible, and training filers around the State on the new requirements. Despite challenges big and small along the way, these roll-outs have been a success due to meticulous planning and execution.

The Commission has also seen a record-setting year in the pace of completing investigations and resolutions. Thanks to recent augmentation of the Commission's investigative team and the leadership of previous Commissioners and current staff, the timeline for completing investigations and resolving complaints is at a historic low, with no signs of backtracking. The Commission's "new normal" in this regard is one to be proud of.

Finally, the members. The Commission has seen five new members—myself included—and seven departures this year alone. Every single new member has hit the ground running with eagerness and appreciation of our important mission. And every seasoned member went above and beyond in demonstrating leadership and endless collegiality as we all worked to row in the same direction and ultimately execute our constitutional charge. The Executive Director and General Counsel were instrumental in facilitating all of these transitions with more patience than any of us probably deserved.

Amidst all this change, the staff has been perhaps the one enduring constant at the Commission this year. Regardless of the agency, Florida's taxpayers are most efficiently served by staff comprised of subject-matter experts. Every member of the Commission's staff comfortably checks that box.

No two people will agree on every issue, all of the time—especially when a bunch of lawyers get involved (which is a dig squarely at myself)—but productive disagreement and discussion are essential to this process. It is the best way to protect our shared objective of reaching the right results under Florida law and preserve the integrity of this Commission's work.

I remain humbled by and grateful for this opportunity, and hope Floridians feel well-served by a group of people who genuinely care about the mission of this body and the public servants within its jurisdiction.

Respectfully,

Ashley H. Lukis
Chair, Florida Commission on Ethics

# 2023 Commission Members

**ASHLEY LUKIS,** *Chair*
Tallahassee - Attorney (R)
Appointed by Governor Ron DeSantis

**MICHELLE ANCHORS,** *Vice Chair*
Fort Walton Beach - Attorney (D)
Appointed by Senate President Bill Galvano

**WILLIAM P. CERVONE**
Gainesville - Former State Attorney (R)
Appointed by House Speaker Chris Sprowls

**TINA DESCOVICH**
Indialantic - Nonprofit Executive (R)
Appointed by Governor Ron DeSantis

**FREDDIE FIGGERS**
Fort Lauderdale - Inventor - Executive (D)
Appointed by Governor Ron DeSantis

**LUIS M. FUSTÉ**
Coral Cables – Attorney (NPA)
Appointed by Governor Ron DeSantis

**WENGAY M. NEWTON, SR.**
St. Petersburg - Former State Representative (D)
Appointed by House Speaker Chris Sprowls

# Introduction & History

Section 112.322(8), Florida Statutes, requires the Florida Commission on Ethics to "submit to the Legislature from time to time a report of its work and recommendations for legislation deemed necessary to improve the code of ethics and its enforcement." This report has been provided to the Legislature on an annual basis since 1974. The publication of this document is intended to inform the Legislature and the public of the Commission's work during the calendar year 2023.

Florida has been a leader among the states in establishing ethics standards for public officials and recognizing the right of her people to protect the public trust against abuse. In 1967, the Legislature enacted "a code of ethics setting forth standards of conduct to be observed by state officers and employees in the performance of their official duties." Chapter 67-469, Laws of Florida, declared it to be the policy of the Legislature that no state officer or employee, or member or employee of the Legislature, should have any direct or indirect business or professional interest that would "conflict with the proper discharge of his duties in the public interest." The code was amended to be applicable to officers and employees of political subdivisions of the state in 1969 (Chapter 69-335, Laws of Florida). Five years later, the Florida Commission on Ethics was statutorily created by Chapter 74-176, Laws of Florida (now Part III, Chapter 112, Florida Statutes), to "serve as guardian of the standards of conduct for the officers and employees of the state, and of a county, city, or other political subdivision of the state...."

In late 1975 and 1976, Governor Reubin Askew led an initiative petition drive to amend the Constitution to provide more stringent requirements relating to ethics in government and to require certain public officials and candidates to file full and public disclosure of their financial interests and their campaign finances. The voters in Florida overwhelmingly approved this measure in the 1976 General Election, and the "Sunshine Amendment," Article II, Section 8, Florida Constitution, became part of the Constitution on January 4, 1977. The Amendment declares: "A public office is a public trust. The people shall have the right to secure and sustain that trust against abuse." The

Constitution provides for investigations of complaints concerning breaches of the public trust and provides that the Florida Commission on Ethics be the independent commission to conduct these investigations.

The "Code of Ethics for Public Officers and Employees" adopted by the Legislature is found in Chapter 112 (Part III) of the Florida Statutes. Foremost among the goals of the Code is to promote the public interest and maintain the respect of the people in their government. The Code is intended to ensure that public officials conduct themselves independently and impartially, not using their offices for private gain other than compensation provided by law. While seeking to protect the integrity of government, the Code also seeks to avoid the creation of unnecessary barriers to public service. Criminal penalties which initially applied to violations of the Code were eliminated in 1974 in favor of administrative enforcement.

Duties statutorily assigned to the Commission on Ethics include investigating sworn complaints alleging violations of the ethics laws, making penalty recommendations for violations, maintaining a financial disclosure notification system totaling 38,026 reporting officials and employees this past year, and issuing advisory opinions regarding Part III of Chapter 112, Florida Statutes, and Article II, Section 8, Florida Constitution. The Commission's jurisdiction was expanded with the adoption of Amendment 12 by Florida voters in 2018. The Constitutional provisions regarding abuse of office for a disproportional benefit were implemented December 31, 2020, and the implementation of the lobbying and post-officeholding provisions took effect December 31, 2022. The Commission also is charged with administering the Executive Branch Lobbyist Registration System and the Executive Branch Lobby Registration Trust Fund. Section 112.3215, Florida Statutes, provides registration requirements for persons wishing to lobby the Executive Office of the Governor, Governor and Cabinet and departments, Commissions, and agencies of the executive branch. Additionally, Section 112.32155, Florida Statutes, directs the Commission to provide an electronic filing system for lobbying firm's to submit quarterly compensation reports. This information is accessible by visiting the Florida Reporting system home page at www.floridalobbyist.gov.

# *Organization*

The Commission on Ethics is an appointive body consisting of nine members, none of whom may hold any public employment or be employed to lobby state or local government. Five of the members are appointed by the Governor and confirmed by the Senate. No more than three of the Governor's appointees may be of the same political party, and one must be a former city or county official. The Speaker of the House of Representatives and the President of the Senate each make two appointments to the Commission. The two appointments must be persons with different political party affiliations. The appointees of the President and Speaker are not subject to Senate confirmation. Any member of the Commission may be removed for cause by a majority vote of the Governor, the President of the Senate, the Speaker of the House, and the Chief Justice of the Florida Supreme Court.

Members of the Commission on Ethics serve two-year terms and may not serve more than two full terms in succession; however, members whose terms have expired continue to serve until they are replaced. A chair and vice-chair are selected by the members for one-year terms. Members of the Commission do not receive a salary but do receive reimbursement for travel and per diem expenses while on official Commission business.

## *Ethics Commission Staff*

Legal, investigative, and administrative functions of the Commission are performed by staff, consisting of 23 full-time equivalent positions.

Kerrie J. Stillman, Executive Director

Steven Zuilkowski, Deputy Executive Director and General Counsel

## *Legal Section*

Under the supervision of the Deputy Executive Director and the General Counsel, the legal section drafts opinions, orders, rules, and proposed legislation for consideration by the Commission, teaches, and responds to inquires about the ethics laws. The legal staff also represents the Commission in litigation.

Commission staff does not prosecute complaints. Those services are provided by Assistant Attorneys General Elizabeth Miller and Melody Hadley, who have been assigned by the Attorney General to act as full-time Advocates for the Commission.

### *Legal Staff*

Grayden Schafer, Assistant General Counsel

Katharine Heyward, Attorney

Joseph Burns, Attorney

## *Investigative Section*

The investigative staff, supervised by the Executive Director, conducts investigations of alleged violations of the ethics laws and writes narrative investigative reports.

### *Investigative Staff*

A. Keith Powell, Investigations Manager

Ronald D. Moalli, Senior Investigator

Charlie Shotwell, Investigator

Tracey Maleszewski, Investigator

Brian Durham, Investigator

John Cizmadia, Investigator

Marian Lambeth, Investigator

Robert Malone, Investigator

## *Complaints*

Under the supervision of the Executive Director, the Complaint Coordinator serves as the liaison between the Commission and the Complainant and Respondent and, as the official Clerk of the Commission, is responsible for maintaining the complaint tracking system and files.

Millie Fulford, Complaint Coordinator

## *Financial Disclosure Section*

The Program Administrator, under the supervision of the Executive Director, responds to questions about the disclosure laws, compiles a list of the persons statewide who are required to file either Form 1 or Form 6 financial disclosure, tracks late filers and automatic fines, and interacts with agency Financial Disclosure coordinators. Some 38,257 reporting officials and employees were notified of their filing requirements in 2022 by the Commission and by the Supervisors of Elections.

*Financial Disclosure Staff*

Kimberly Holmes, Program Administrator

Emily Prine, Program Specialist

Keyana Green, Executive Secretary

## *Public Information & Administrative Section*

Under the supervision of the Executive Director, the Chief Administrator oversees office technology, responds to general inquiries about the ethics laws, provides information regarding Commission practices and procedures to the press and the public, and oversees the administrative and clerical support staff who provide support services to the Commissioners and staff.

*Administrative and Clerical Staff*

Lynn Blais, Chief Administrator

Diana Westberry, Office Manager

Kathy Steverson, Assistant to the Executive Director

Vacant, Executive Secretary

Rachel Campbell, Clerk (half-time)

Jeremy Pennington, Clerk (half-time)

## *Executive Branch Lobbyist Registration*

The Commission is charged with administering the Executive Branch Lobby Registration Act and oversees the registration of executive branch lobbyist and compensation report filings of executive branch lobbying firms.

*Lobbyist Registration Staff*

Karen Murphy-Bunton, Registrar

# Fiscal Report

The following chart reflects revenues, expenditures, and changes in fund balances for the fiscal year ending June 30, 2023.

BUDGET AND ACTUAL - GENERAL REVENUE FUNDS
For The Fiscal Year Ending June 30, 2023
(Amounts in dollars)

| | Ethics General Revenue | | |
|---|---|---|---|
| | Budget | Actual | Variance-Favorable (Unfavorable) |
| **Revenues:** | | | |
| Released General Revenue Appropriations | $3,016,874 | $3,016,874 | $0 |
| Fines* | 0 | 25,119 | $25,119 |
| Miscellaneous Receipts | 0 | 0 | $0 |
| **Total Revenues** | **3,016,874** | **3,041,993** | **25,119** |
| **Expenditures:** | | | |
| Salaries and Related Benefits | 2,029,805 | 1,783,364 | 246,441 |
| Other Personal Services | 470,480 | 413,368 | 57,112 |
| Expenses | 262,140 | 208,712 | 53,428 |
| Operating Capital Outlay | 2,500 | 1,390 | 1,110 |
| Ethics Commission Lump Sum | 81,823 | 0 | 81,823 |
| Transfers to Administrative Hearings | 66,884 | 66,884 | 0 |
| Risk management insurance | 3,242 | 3,242 | 0 |
| Legislative Carryforward ** | 2,891,175 | 25,769 | 2,865,406 |
| Nonoperating*** | 100,000 | 3,000 | 97,000 |
| **Total Expenditures** | **5,908,049** | **2,505,729** | **3,402,320** |
| Excess (Deficiency) of Revenues and Other Financing Sources Over Expenditures | (2,891,175) | 536,265 | $3,427,439 |
| **Budgetary Fund Balance, June 30, 2023** | | **536,265** | |
| **Adjustment for Fines*** | | **(25,119)** | |
| **Adjustment for Nonoperating***** | | **(100,000)** | |
| **Adjustments for Carryforward Expenditures**** | | | |
| **Adjusted Budgetary Fund Balance, June 30, 2023** | | **$411,145** | |

## EXECUTIVE BRANCH LOBBYIST REGISTRATION SUMMARY

FEES REVENUES: $ 338,100
FINES: $ 3,300

* Fines are recorded as Collection to General Revenue. They are not a revenue in the state's accounting system and are not an available resource to the fund.

** Legislative Carryforward is prior years' unspent budget carried forward to the current year. It is treated as a current appropriation.

*** Nonoperating Budget is budget set up to refund fines and is not an available resource to the fund.

# Operations

The major operational functions of the Commission on Ethics are the investigation of complaints and referrals,* management of the Executive Branch Lobbyist Registration Act, issuance of advisory opinions, provision of public information and education, and financial disclosure administration. This section offers a profile of the Commission's workload.

## Complaints

### Ten Year History of Complaints

Looking at the number of complaints filed annually, it appears there is a steady, upward trend since 2017. This year, we experienced the highest year-to-year increase in complaints filed with the Commission since 2012. It is anticipated that with the full implementation of Amendment 12, and more public awareness of its requirements due to recent litigation, the Commission may see further increases in the number of complaints.

| | |
|---|---|
| *2023* | *292* |
| *2022* | *223* |
| *2021* | *238* |
| *2020* | *243* |
| *2019* | *231* |
| *2018* | *211* |
| *2017* | *180* |
| *2016* | *220* |
| *2015* | *244* |
| *2014* | *259* |




* The Commission may accept referrals from the Governor, State Attorneys, U.S. Attorneys, and the Florida Department of Law Enforcement.

# *Complaints*

Total number of complaints and referrals filed in 2023. . . . . . . . . . . . . . . . . . . . . . . . . .292

| POSITION | NUMBER OF COMPLAINTS | PERCENT OF TOTAL |
|---|---|---|
| State Elected | 10 | 3.4% |
| State Employee | 23 | 7.9% |
| District Elected | 27 | 9.2% |
| District Employee | 3 | 1.0% |
| County Elected | 69 | 23.6% |
| County Appointed | 1 | 0.3% |
| County Employee | 27 | 9.2% |
| Municipal Elected | 94 | 32.2% |
| Municipal Appointed | 17 | 5.8% |
| Municipal Employee | 20 | 6.8% |
| Other | 1 | 0.3% |
| TOTAL | 292 | 100.0% |

Of the 292 complaints and referrals received in 2023, 168 were dismissed for lack of legal sufficiency; 3 withdrawn; 81 were ordered to be investigated; and 40 were pending a legal sufficiency determination, as of December 31.




# *Timeframes for Completed Investigations*

An analysis of all 81 investigations completed in 2023 shows that 64 were completed within 150 days of the investigation being ordered, and the average was 121 days.



# *Allegations*

Of the 292 complaints and referrals received in 2023, 81 had been ordered to be investigated as of December 31, 2023. A breakdown of the allegations made in complaints found sufficient for investigation is illustrated below. Most complaints contained allegations concerning more than one area of law.

**2023 Complaint Allegations**



## *Actions Taken on Complaints in 2023*

The Commission took action during its regularly-scheduled meetings on complaints, referrals, statutorily-mandated investigations concerning lobbyist compensation reports, determination as to whether late-filed disclosure was "willful," and petitions for costs and attorney fees. The following is a summary of action taken in 2023, across all active complaints.

Complaints & Mandatory Willfulness Investigations .................................................. 326

Dismissed for lack of legal sufficiency ........................................................ 217

Dismissed for lack of jurisdiction ................................................................4

Complaintant withdrawal request granted ....................................................4

Probable cause hearings held ........................................................................ 82

No probable cause - dismissed.................................................54

Probable cause ......................................................................... 14

Probable cause - no further action ......................................... 13

Dismissed ........................................................................... 1

Stipulations ...............................................................................................13

Violation ......................................................................... 13

Final Action - Relinquished Jurisdiction by
Division of Administrative Hearings ..................................................... 2

Advocate Motion to Dismiss Complaint........................................................ 4

Costs and attorney's fees petitions ........................................................................... 1

Insufficient petition - dismissed ...................................................................... 1

**TOTAL NUMBER OF ACTIONS TAKEN ON COMPLAINTS ......327**

# Executive Branch Lobbyist Registration

A person who is a "lobbyist" as defined in Section 112.3215(1)(h), F.S., may not lobby an Executive branch agency until he or she has registered as a lobbyist with the Commission. Executive branch lobbyist registration may be made by electronic means via the Lobbyist Registration and Compensation Reporting system located at www.floridalobbyist.gov. Lobbyist registrants are required to pay an annual registration fee of $25 for each principal represented, which is deposited into the Executive Branch Lobby Registration Trust Fund. The fee is payable on a calendar year basis and there is no charge if a lobbyist amends his or her registration to lobby additional agencies on behalf of the same principal.

Executive branch lobbying firms are required to electronically file quarterly compensation reports disclosing compensation received from their principals. Penalties for failure to file these quarterly reports by the deadline are automatic and accrue at $50 for each day late, with a maximum penalty of $5,000.

Each lobbying firm is entitled to receive a one-time fine waiver if the report is filed within 30 days after the firm is notified of the failure to file. Otherwise, the lobbying firm is assessed a fine at the time the delinquent report is filed. If an appeal is filed within 30 days after the lobbying firm is noticed of the assessed fine, the Commission has the authority to waive the assessed fines in whole or in part for good cause, based on "unusual circumstances."

## 2023 Summary of Activity

Total number of registered executive branch lobbyists .......... 1544

Total number of executive branch lobbying firms .......... 330

Total number of principals represented by the lobbyists .......... 13,509

Percent *increase* in number of principals from 2022 to 2023 .......... 9.72%

Total number of firms delinquent in filing their compensation reports

October - December 2022 .......... 13

(*Filing deadline for fourth quarter 2022 was February 14, 2023)*

January - March 2023 .......... 17

April - June 2023 .......... 10

July - September 2023 .......... 14

Total number of firms assessed a fine in 2023

Fourth quarter 2022 .......... 8

(*Filing deadline for fourth quarter 2022 was February 14, 2023)*

First quarter 2023 .......... 13

Second quarter 2023 .......... 9

Third quarter 2023 .......... 9

Number of appeals considered by the Commission in 2023 .......... 2

# *Advisory Opinions*

The Commission issues advisory opinions to public officers, candidates, and public employees who are in doubt about the applicability of the standards of conduct or disclosure laws to themselves or to anyone they have the power to hire or terminate. During 2023, the Commission on Ethics issued eight advisory opinions, bringing the total issued since 1974 to 2,702.

Six of the opinions rendered in 2023 were in response to requests by local officers, employees, or local government attorneys, and another two opinions were issued regarding state level officers or employees.

The bar graph illustrates the number of instances in which a provision of the ethics code was addressed in a formal opinion of the Commission in 2023. A number of opinions addressed more than one aspect of the ethics laws.




All Commission advisory opinions, from 1974 to present, can be accessed and researched without cost on our website: http://www.ethics.state.fl.us.

# *Training & Education*

Pursuant to Section 112.3142, Florida Statutes, Florida's Constitutional officers (including the Governor, Lieutenant Governor, Attorney General, Chief Financial Officer, Commissioner of Agriculture, state attorneys, public defenders, sheriffs, tax collectors, property appraisers, supervisors of elections, clerks of the circuit court, county commissioners, district school board members, and superintendents of schools), elected municipal officers, and CRA members are required to complete four hours of ethics training each calendar year.

The training must include:

- Article II, Section 8 of the Florida Constitution
- Part III, Chapter 112, Florida Statutes (Code of Ethics)
- Public Records
- Public Meetings (Sunshine Law)

The requirement may be satisfied by completion of a continuing legal education class or other continuing professional education class, seminar, or presentation if the required subjected are covered. The Commission has a training page on its website that features the latest administrative rules and ethics opinions on the mandatory training requirements. From that page, individuals can access free training audio and video of the Commission's staff, as well as a listing of live training opportunities conducted by staff at various locations around the state.

# *Speaking Engagements*

A vital part of the Commission's mission is to educate public officers and employees regarding the standards of conduct and financial disclosure requirements of the Code of Ethics. As personnel and resources are available, members of the Commission's staff conduct training for public officials throughout the state. Commission staff presented educational programs to the following groups and organizations during 2023:

- City of Gainesville
- Florida Department of Revenue Property Tax Oversight Courses
- Florida Department of Revenue's Duties & Responsibilities Tax Collectors
- Property Appraisers & Tax Collectors at DOR'S Continuing Education
- Florida Public Pension Trustee's Association's Winter Trustee School
- Training for new Supervisors of Elections
- Property Appraisers Association of Florida's Mid-Winter Conference
- Florida Coordinating Council for the Deaf and Hard of Hearing
- Florida's Bar Annual Sunshine Law, Public Records, and Ethics Conference
- Florida Bar's City, County, & Local Law Certification Review Course
- Florida Public Relations Association's Leadership Class
- Assistant State Attorneys of the 8th Judicial Circuit
- Florida Department of Environmental Protection
- Florida Association of Constitutional Officers
- Administrative Law Judges and Judges of Compensation Claims
- Florida League of Cities Conference
- Escambia County Employees
- Association of Inspectors General
- Broward County Municipal Clerks Association
- Levy County Municipal Clerks
- Florida School Board Attorneys Association
- ManaSota League of Cities
- Institute for County Government Training
- Tri-County League of Cities
- Council on Governmental Ethics Laws (COGEL) Conference

# Financial Disclosure

The Florida Commission on Ethics is required by statute to compile an annual mailing list of elected and appointed officials and employees subject to filing annual financial disclosure. Additionally the Commission was tasked with the development of an electronic filing system. The phased launch began January 1, 2022 with Form 6 filers. The system was paused in June and relaunched January 1, 2023. Form 1 filers will file electronically beginning January 1, 2024. The Commission has invested significant staff hours over the past year to the details of the development and launch of the system and the Commission expects significant workload increases with the rollout of the program.

Section 112.3144, Florida Statutes, applies to persons subject to the annual filing of full and public disclosure under Section 8, Article II of the State Constitution or other state law. These individuals file Commission on Ethics Form 6, Full and Public Disclosure of Financial Interests.

Section 112.3145, Florida Statutes, applies to local officers, state officers, and specified state employees subject to the annual filing of a more limited statement of financial interests. These individuals file Commission on Ethics Form 1, Statement of Financial Interests.

The deadline for filing disclosure is July 1 of each year. A grace period is provided until September 1 of each year. The Commission on Ethics and Supervisors of Elections are required to certify after that time the names of, and positions held by, persons who fail to file by the end of the grace period.

Those who did not file their annual disclosure form (either Form 6 or Form 1) by September 1, 2023, were subject to automatic fines of $25 for each late day, up to a maximum of $1,500. Modeled after the automatic fine system in place for campaign finance reports, the law allows the Ethics Commission to hear appeals and to waive fines under limited circumstances. Information on the following pages reflects compliance rates and disposition of appeals.

# Compliance

There was more than a 98.5% overall compliance with the annual reporting requirement in 2023. On the local level, 30 counties reported 100% compliance in 2023. The following table reflects on a county-by-county basis the number of officials and employees subject to disclosure, the number delinquent, and the percentages of compliance. Also provided is a chart which outlines filing compliance from 2003 to present.

| 2023 Financial Disclosure Compliance Figures | | | | |
|---|---|---|---|---|
| **County** | **Delinquent Filers** | **Timely Filers** | **Total Filers** | **Compliance Rate** |
| Alachua | 0 | 278 | 278 | 100% |
| Baker | 0 | 48 | 48 | 100% |
| Bay | 2 | 261 | 263 | 99% |
| Bradford | 0 | 63 | 63 | 100% |
| Brevard | 3 | 779 | 782 | 99.6% |
| Broward | 44 | 2344 | 2388 | 98% |
| Calhoun | 0 | 27 | 27 | 100% |
| Charlotte | 2 | 161 | 163 | 99% |
| Citrus | 0 | 108 | 108 | 100% |
| Clay | 0 | 230 | 230 | 100% |
| Collier | 3 | 389 | 392 | 99% |
| Columbia | 0 | 85 | 85 | 100% |
| Miami-Dade | 174 | 2342 | 2516 | 93% |
| Desoto | 4 | 62 | 66 | 94% |
| Dixie | 0 | 31 | 31 | 100% |
| Duval | 1 | 397 | 398 | 99.7% |
| Escambia | 0 | 175 | 175 | 100% |
| Flagler | 2 | 189 | 191 | 99% |
| Franklin | 1 | 67 | 68 | 99% |
| Gadsden | 1 | 92 | 93 | 99% |
| Gilchrist | 0 | 41 | 41 | 100% |
| Glades | 0 | 35 | 35 | 100% |
| Gulf | 1 | 52 | 53 | 98% |
| Hamilton | 1 | 52 | 53 | 98% |
| Hardee | 1 | 52 | 53 | 98% |
| Hendry | 0 | 95 | 95 | 100% |
| Hernando | 0 | 86 | 86 | 100% |
| Highlands | 1 | 165 | 166 | 99% |
| Hillsborough | 31 | 1118 | 1149 | 97% |
| Holmes | 1 | 70 | 71 | 99% |
| Indian River | 0 | 236 | 236 | 100% |
| Jackson | 1 | 166 | 167 | 99% |
| Jefferson | 0 | 43 | 43 | 100% |
| Lafayette | 0 | 20 | 20 | 100% |
| Lake | 4 | 493 | 497 | 99% |
| Lee | 5 | 1043 | 1048 | 99.5% |
| Leon | 2 | 235 | 237 | 99% |
| Levy | 1 | 127 | 128 | 99% |
| Liberty | 0 | 24 | 24 | 100% |
| Madison | 0 | 65 | 65 | 100% |

| 2023 Financial Disclosure Compliance Figures | | | | |
|---|---|---|---|---|
| **County** | **Delinquent Filers** | **Timely Filers** | **Total Filers** | **Compliance Rate** |
| Manatee | 3 | 517 | 520 | 99% |
| Marion | 1 | 233 | 234 | 99.6% |
| Martin | 0 | 247 | 247 | 100% |
| Monroe | 0 | 202 | 202 | 100% |
| Nassau | 3 | 191 | 194 | 99% |
| Okaloosa | 2 | 323 | 325 | 99% |
| Okeechobee | 1 | 82 | 83 | 99% |
| Orange | 7 | 869 | 876 | 99% |
| Osceola | 0 | 259 | 259 | 100% |
| Palm Beach | 81 | 1593 | 1674 | 95% |
| Pasco | 1 | 462 | 463 | 99.8% |
| Pinellas | 6 | 1192 | 1198 | 99.5% |
| Polk | 17 | 645 | 662 | 97% |
| Putnam | 0 | 134 | 134 | 100% |
| Saint Johns | 5 | 363 | 368 | 99% |
| Saint Lucie | 3 | 284 | 287 | 99% |
| Santa Rosa | 0 | 186 | 186 | 100% |
| Sarasota | 1 | 401 | 402 | 99.8% |
| Seminole | 9 | 434 | 443 | 98% |
| Sumter | 0 | 161 | 161 | 100% |
| Suwannee | 0 | 58 | 58 | 100% |
| Taylor | 0 | 52 | 52 | 100% |
| Union | 0 | 41 | 41 | 100% |
| Volusia | 6 | 642 | 648 | 99% |
| Wakulla | 0 | 70 | 70 | 100% |
| Walton | 0 | 129 | 129 | 100% |
| Washington | 0 | 65 | 65 | 100% |
| **TOTAL-FORM 1 LOCAL** | **432** | **22181** | **22613** | **98%** |
| **TOTAL-FORM 1 STATE** | **114** | **12690** | **12804** | **99%** |
| **TOTAL-FORM 6 (NOT JUDGES)** | **7** | **1380** | **1387** | **99.5%** |
| **TOTAL-JUDGES (ACTIVE)** | **0** | **1033** | **1033** | **100%** |
| **TOTAL-JUDGES (SENIOR)** | **0** | **189** | **189** | **100%** |
| **OVERALL TOTAL** | **553** | **37473** | **38026** | **98.5%** |

| FINANCIAL DISCLOSURE FILING COMPLIANCE (2003 - 2023) | | | |
|---|---|---|---|
| **Year** | **# of Individuals Required to File** | **# of Form 1 & 6 Delinquent Filers** | **Overall Compliance Rate** |
| 2003 | 34,298 | 878 | 97% |
| 2004 | 35,984 | 1,124 | 97% |
| 2005 | 36,504 | 723 | 98% |
| 2006 | 35,725 | 724 | 98% |
| 2007 | 35,659 | 691 | 98% |
| 2008 | 36,092 | 767 | 98% |
| 2009 | 37,077 | 353 | 99% |
| 2010 | 36,961 | 340 | 99% |
| 2011 | 37,686 | 361 | 99% |
| 2012 | 37,306 | 356 | 99% |
| 2013 | 37,890 | 309 | 99% |
| 2014 | 38,181 | 249 | 99% |
| 2015 | 38,613 | 291 | 99% |
| 2016 | 38,824 | 289 | 99% |
| 2017 | 38,909 | 314 | 99% |
| 2018 | 39,402 | 326 | 99% |
| 2019 | 39,433 | 412 | 99% |
| 2020 | 38,792 | 456 | 99% |
| 2021 | 38,519 | 604 | 98% |
| 2022 | 38,257 | 715 | 98% |
| 2023 | 38,026 | 553 | 98.5% |

Financial Disclosure Compliance History



## ***Summary of Local Level Form 1 Compliance***

- Total compliance rate for Form 1 Statement of Financial Interests was 98.1%. As in previous years, disclosure staff sent reminder postcards to delinquent filers immediately prior to the start of the statutory fining period. Commission staff also telephoned filers to remind them to file. These reminders are not required by statute, but are part of the Commission's additional efforts to encourage compliance.
- Of the 22,613 individuals required to file, 432 were delinquent.
- 30 counties reported 100% compliance in 2023.

## ***Summary of State Level Form 1 Compliance***

- The Form 1 compliance rate was 99.1%. Postcard and telephone reminders also were used with these filers.
- Of the 12,804 individuals required to file, only 114 were delinquent.

## ***Summary of Full Disclosure (Form 6) Compliance***

- Form 6 Full and Public Disclosure of Financial Interests compliance rate for elected constitutional officers and employees other than judges was 99.5%. Postcard and telephone reminders also were used with these filers.
- There were only 7 delinquencies out of a total of 1,387 individuals (excluding judges) required to file Form 6.

## ***Summary of 2022 Overall Compliance***

- Out of the 38,026 individuals who were non-judicial financial disclosure filers, there were only 553 (less than 1%) officers and employees who failed to do so.

# *Financial Disclosure Fine Appeals*

Individuals delinquent in filing the annual financial disclosure form (those who did not file by the end of the September 1 grace period provided by law), are fined $25 per day for each day late, up to a statutory maximum of $1,500.

Individuals may opt to pay the assessed fine or may appeal the assessed fine. Under the law, the Commission has the authority to waive or reduce an assessed fine if an appeal is filed reflecting that "unusual circumstances" caused the failure to file the form on time.

For fines where there is no appeal and no payment, a Default Final Order is rendered and the cases are either transmitted to private collection agencies for collection, or the Commission attempts to make collections.

The following reflects the Commission's actions taken on appeals of assessed fines at its regularly scheduled meetings held during calendar year 2023. (The fines for late filings in 2023 recently have been assessed and will be reported in 2024).

**Financial Disclosure Appeals**
**2023 Actions of Commission on Ethics**

| COMMISSION MEETING | WAIVED | REDUCED | DENIED | DEFAULT ORDERS APPROVED | UNCOLLECTIBLE |
|---|---|---|---|---|---|
| January 27, 2023 | 1 | 0 | 0 | 0 | 0 |
| March 10, 2023 | 2 | 0 | 0 | 0 | 0 |
| April 21, 2023 | 0 | 0 | 0 | 0 | 4 |
| June 9, 2023 | 0 | 0 | 0 | 0 | 0 |
| July 28, 2023 | 5 | 1 | 1 | 0 | 0 |
| September 8, 2023 | 0 | 0 | 0 | 0 | 0 |
| October 20, 2023 | 1 | 0 | 0 | 0 | 0 |
| December 1, 2023 | 6 | 0 | 0 | 0 | 0 |

# *2024 Legislative Recommendations*

For 2024, the Commission on Ethics makes the following recommendations regarding legislativechanges to the Code of Ethics for Public Officers and Employees (Code of Ethics).

Conflicts of Interest

Section 112.313(7)(a), Florida Statutes, prohibits a public officer or employee from having a contractual relationship with a company doing business with the official's own agency. So City Councilman A cannot contract with Business B, if Business B is doing business with his City. But if Councilman A creates "A, Inc.," that corporation can do business with Business B without violating the law, even if "A, Inc.," is solely owned by Councilman A. The Commission has seen this as thwarting the underlying goal of the law, which is to prevent officials from having relationships with companies doing business with their agencies.

Voting Conflicts Law

Under current law, Section 112.3143, Florida Statutes, state and local elected officials can participate in the discussion of a measure in which they have a conflict without revealing the existence of that conflict until the vote is actually taken. This means the official can make every effort to persuade his or her colleagues without telling them (and the public) about the conflict. Appointed officials, in contrast, must declare their conflict before participating in the discussion of the measure. Elected officials should have to adhere to the same standard.

In addition, state officers only have to abstain if the measure helps or hurts them personally. Unlike local officials, they do not have to abstain when the measure benefits their employer, relative, etc.

The Commission has expressed that the voting conflict standard should be the same for everyone, whether the official is appointed or elected and whether the official is a state or local official; and that the exemption from using the Commission's conflict disclosure form applicable only to Legislators be eliminated.

Whistle Blower-like Protection for Ethics Complainants

The Commission believes that the threat of adverse employment or personnel actions in retaliation for a person's filing of an ethics complaint discourages the filing of valid complaints. Thus, the Commission seeks the enactment of

protections or remedies, akin to those in the "Whistle-blower's Act," Sections 112.3187-112.31895, Florida Statutes, for the benefit of ethics complainants.

Costs and Fees Eligibility for Candidates

In a recent meeting, the Commission considered a fees petition filed by a candidate who did not hold public office. That petition was dismissed because as the law is currently written, candidates cannot petition for attorney's fees. The Commission could recommend a minor change to the law that would permit candidates, when their petition meets the requirements of the law, could go to a hearing to seek payment of attorney's fees and costs by a complaint.

Individuals appointed to fill an elected office

The Commission should consider a recommendation that 112.3144(10) be amended to clarify that individuals appointed to complete the remainder of the term of office for a Form 6 office are required to complete a Form 6 disclosure.

Fines for In-Office and Post-Office Lobbying Restrictions

In 2023, the Legislature accepted the Commission's recommendation to increase the penalties for ethics violations by increasing the civil penalties in Section 112.317 from $10,000 to $20,000. Staff has identified that the In-Office and Post-Office Lobbying Restrictions do not rely on Section 112.317 for penalties, but instead rely on Section 112.3122. Section 112.3122 has its own penalty provision, which includes civil penalties up to $10,000. The section should be amended to comport with Section 112.317.

Salary Withholding for Complaint Penalties

Currently, the Commission Advocates obtain judgments from the courts when a Respondent fails to pay an imposed penalty. The Advocates ask the Commission consider recommending an additional tool for collecting civil penalties under 112.317(2). Salary withholding would be an efficient, cost-effective way to collect complaint civil penalties. It has proven very effective with the statutory automatic fines for late-filed disclosure forms. Language could be adapted from 112.31455(1) and added to 112.317.

## Legislation Opposed by the Commission

Representing Clients Before One's Own Board

The Commission has opinions as early as 1977 and even since 2020 interpreting Section 112.313(7), Florida Statutes, to say, in essence, that if a person serves on a board, he cannot represent clients before that board, and neither can other members of his professional firm. This interpretation is similar to the Rules of Professional Conduct of the Florida Bar, which impute the conflict of one lawyer to all lawyers in the firm. The Commission views this as an important public protection, and opposes any relaxation of this standard.

Gifts, Expenditures, or Compensation from Lobbyists

The Commission opposed HB 1435 and SB 1490 in the 2020 session. These bills, which did notpass, would have allowed donations from lobbyists or their principals, unlimited in amount, to certain public employees and appointed public officials if the donations were used toward costs associated with serious injury, disease, or illness of the employee, appointed officer, or his or her child. Such a vast exemption to the gift and expenditure laws, aimed at public officials when they are most vulnerable to undue influence from special interests, would seriously undermine effective restrictions and prohibitions which have protected the public trust for many years. The Commission continues to oppose an unlimited exemption to the gift and expenditure laws.