**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-20604-CIV-DAMIAN**

**ELIZABETH A. LOPER,** *et al.*,

     Plaintiffs,

vs.

**ASHLEY LUKIS,** *et al.*,

     Defendants.

_____/

**ORDER ON PLAINTIFFS' EXPEDITED**
**MOTION FOR PRELIMINARY INJUNCTION [ECF NO. 10]**

**THIS CAUSE** is before the Court on Plaintiffs' Expedited Motion for Preliminary Injunction and Incorporated Memorandum of Law, filed March 22, 2024 [ECF No. 10 (the "Motion" or "Motion for Preliminary Injunction")].

THE COURT has reviewed the Motion, the Response and Reply thereto [ECF Nos. 16, 18], the supplemental briefs [ECF Nos. 34, 35], the pertinent portions of the record, and the relevant legal authorities and is otherwise fully advised in the premises. The Court also heard from the parties' counsel at an evidentiary hearing held on April 22, 2024. [ECF No. 27].

Plaintiffs seek a preliminary injunction enjoining enforcement of Florida's Senate Bill 774 ("SB 774") on grounds the law impermissibly compels content-based, non-commercial speech in violation of the First Amendment of the United States Constitution. After conducting a hearing and careful review of the record, and for the reasons set forth below, the Court concludes that entry of a preliminary injunction is warranted.

## FACTUAL BACKGROUND[1]

### A. Financial Disclosure in Florida and Enactment of SB 774

In 1976, the Florida Constitution was amended to require certain public officials and candidates to file full and public disclosures of their financial interests. *See* Art. II, § 8, Fla. Const.; § 112.3144, Fla. Stat. The 1976 Amendment, titled the "Sunshine Amendment," states: "[P]ublic office is a public trust. The people shall have the right to secure and sustain that trust against abuse." Art. II, § 8, Fla. Const. The Sunshine Amendment mandates that "[a]ll elected constitutional officers and candidates for such offices and, as may be determined by law, other public officers, candidates, and employees shall file full and public disclosure of their financial interests." *Id.* at § 8(a).

Since the 1970s, the Florida Commission on Ethics (hereinafter, the "COE") has required certain public officials to file the form known as "Form 6" to satisfy the disclosure requirements of the Sunshine Amendment. *See* § 112.3144(8) ("Forms or fields of information for compliance with the full and public disclosure requirements of [Section 8, Article II] of the State Constitution must be prescribed by the [COE]."). Form 6, which must be filed annually, requires these certain elected public officials and candidates to state: (1) their net worth; (2) the amount of the aggregate value of household goods and personal effect(s); (3) descriptions and amount of assets and liabilities over $1,000; and (4) every source of income,

---

[1] The parties' filed a Joint Witness and Exhibit List and Stipulations of Fact [ECF No. 19] and Supplemental Stipulations of Fact [ECF No. 25]. The parties, however, conventionally filed the exhibits for the Court's consideration at the evidentiary hearing on April 22, 2024. *See* ECF No. 27. Therefore, citations to the conventionally filed exhibits are referenced herein as "Ex. __ at [page number]" (*e.g.*, Ex. J1 at 2). Where possible, the Court also cites materials readily available to the public.

including name and address of the source, in excess of $1,000. *See generally* Ex. J2; *see also* Fla. Admin. Code R. 34-8.002 (2024).

Prior to January 1, 2024, the Form 6 requirement did not apply to elected municipal officials or candidates for municipal office. *See* § 112.3145, Fla. Stat. (2022). Instead, municipal officials and candidates were required to comply with the disclosure requirements of Form 1, which is less comprehensive than Form 6. Form 1 requires these individuals to disclose: (1) major sources but not amounts of income over $2,500; (2) intangible personal property valued over $10,000 and real property; and (3) liabilities over $10,000. *See generally* Ex. J1; *see also* Fla. Admin. Code R. 34-8.202 (2023).

During its 2023 session, the Florida Legislature passed, and the Governor later signed into law, SB 774, which amended Sections 112.3144 and 112.3145, Florida Statutes. *See* Ch. 2023-49, Laws of Fla. As of January 1, 2024, SB 774 applies to mayors and other elected members of the governing bodies of municipalities. § 112.3144(1)(d), Fla. Stat. (2023). The law requires that these municipal officials file Form 6 by July 1, 2024. §112.3145(2)(b), Fla. Stat. (2023). Any official who fails to comply with this requirement will be subject, after a 60-day grace period, to fines of $25 a day up to $1,500. § 112.3144(8)(f), Fla. Stat. (2023). After an investigation and public hearing, the noncompliant official could be subject to a civil penalty of up to $20,000 and, among other things, a recommendation of removal from office. *See* §§ 112.317, 112.324(4), Fla. Stat. (2023).

Plaintiffs challenge SB 774 on the grounds the requirement that they now complete the Form 6 financial disclosures is government-compelled content-based speech that infringes on their rights to free speech under the First Amendment of the United States Constitution.

Analysis of Plaintiffs' First Amendment challenge requires a review of the legislative record leading to the enactment of the law.

### B.  The Legislative Record.

#### 1.  Senate Committee Staff Analyses.

Prior to its passage, SB 774 was considered and reviewed by two Florida Senate Standing Committees: the Committee on Ethics and Elections and the Committee on Rules. Both Committees prepared staff analysis reports (the "Analyses" or "Committee Analyses"). *See generally* Exs. J10(c), J11(b).[2] The Analyses from the two Committees are substantively the same. The Committees' Analyses summarize the history of the COE and the Code of Ethics for Public Officers and Employees, and both explain the effects of the proposed changes in implementing SB 774. However, neither Committee Analysis explains the reasoning behind nor justification for the change to the requirement that municipal elected officials and candidates must now file Form 6, as opposed to the previously required Form 1. A review of the Committees' Analyses reveals that neither includes empirical data nor evidence suggesting that either Committee investigated, studied, or solicited reports on the need for municipal elected officials to comply with the more comprehensive requirement of Form 6. Nor does either Analysis demonstrate that the Committees considered alternative, less burdensome means that would have addressed the interests at stake or the purpose or intent of SB 774.

---

[2] *See also* Fla. S. Comm. on Ethics & Elections on SB 774 (2023) Post-Meeting Staff Analysis (Mar. 15, 2023), https://www.flsenate.gov/Session/Bill/2023/774/Analyses/2023s00774.rc.PDF; Fla. S. Comm. on Rules on SB 774 (2023) Post-Meeting Staff Analysis (Mar. 30, 2024), https://www.flsenate.gov/Session/Bill/2023/774/Analyses/2023s00774.rc.PDF.

### 2.  *House Committee Staff Analyses.*

Meanwhile, in the Florida House of Representatives, SB 774 underwent three analyses by two Subcommittees and one Committee: the Local Administration, Federal Affairs & Special Districts Subcommittee; the Ethics, Elections & Open Government Subcommittee, and the State Affairs Committee.[3] *See generally* Exs. J12–J14. Like the Senate Committees' Analyses, the House Analyses detail the requirements SB 774 places on elected municipal officials.[4] Also like the Senate Committees' Analyses, the House Analyses are devoid of reasoning and similarly lack data or other reports underpinning the need, reasoning, or justification for the change in disclosure requirements for municipal elected officials from Form 1 to Form 6. And, like the Senate Committee Analyses, there is no indication in the House Analyses that the legislative entities considered alternative, less intrusive means that would have addressed the interests, purpose, or intent of SB 774 insofar as the change to the disclosure requirements for municipal officials is concerned.

### 3.  *COE 2022 & 2023 Annual Reports.*

Both Senate Committee Analyses contain an identical footnote that cites to a 2022 Annual Report by the COE and states that "[e]nhanced financial disclosure for local elected officials" was, among others, a recommendation to the Florida Legislature. *See* Exs. J10(c) at

---

[3] *See also* Fla. H.R. Subcomm. on Local Administration, Federal Affairs & Special Districts for HB 37 (2023) Post-Meeting Staff Analysis (Mar. 15, 2023), https://www.flsenate.gov/Session/Bill/2023/37/Analyses/h0037b.LFS.PDF; Fla. H.R. Subcomm. on Ethics, Elections & Open Government for HB 37 (2023) Post-Meeting Staff Analysis (Apr. 11, 2023), https://www.flsenate.gov/Session/Bill/2023/37/Analyses/h0037c.SAC.PDF; Fla. H.R. Comm. on State Affairs for HB 37 (2023) Post-Meeting Staff Analysis (May 15, 2023), https://www.flsenate.gov/Session/Bill/2023/37/Analyses/h0037z1.EEG.PDF.

[4] The State Affairs Committee conducted its analysis after the bill was signed into law.

10; J11(b) at 10. Like all of the legislative Committee and Subcommittee Analyses discussed above, the 2022 Annual Report does not identify any empirical data or evidence suggesting that the COE investigated, studied, or solicited reports to justify the change to or need for the Form 6 disclosure requirements for these municipal officials, nor does it indicate whether other less intrusive means for addressing their concerns were considered. *See generally* Ex. J7; *see also* ECF No. 16-1.

The COE's 2023 Annual Report adds little, indicating only that there has been a "steady, upward trend" in the number of ethical complaints against elected officials, including municipal officials, received by the COE since 2017. *See* Ex. J24; *see also* ECF No. 16-3 at 13. It does not, however, indicate that any analysis was done that led to the conclusion that more comprehensive financial disclosures are needed or will address that trend, much less that the information required by Form 6 is necessary or relevant to the issue of the steady, upward trend in the number of ethical complaints.

#### 4.  *Senate Committee On Ethics And Elections March 2023 Meeting.*

During a March 14, 2023, meeting of the Senate Committee on Ethics and Elections, Senator Jason Brodeur, the bill's sponsor, stated that the bill would conform the financial disclosure requirements of municipal elected officials and candidates to the financial disclosure requirements of elected state constitutional officers. *See* Ex. J17 at 2:5–11.[5] Senator Brodeur went on to state that "in municipalities where there are five folks who decide millions of dollars in budgets[,] *it is probably better* for the public to have a full financial transparency."

---

[5] A video recording of the March 14, 2023, Committee proceeding is also publicly viewable. *See generally* Fla. S. Comm. on Ethics & Elections, recording of proceedings (Mar. 14, 2023, 4:00 PM), https://www.flsenate.gov/media/VideoPlayer?EventID=1_nty0d3lq-202303141600&Redirect=true (last visited May 16, 2024).

*Id.* at 2:13–16 (emphasis added). A Committee member then asked Senator Brodeur what prompted the change, to which Senator Brodeur responded that the more detailed financial disclosure requirement had been requested by the COE for "many years." *Id.* at 6:15–21. Senator Brodeur also reiterated that in municipalities, a few individuals make multi-million-dollar decisions and that voters, in turn, deserve to know "when there would be some kind of collusion and/or some kind of improper incentive." *Id.* at 7:17–20. When asked if he felt that Form 6's disclosure requirements could deter individuals from running, Senator Brodeur responded that "it could, but if you have somebody who's not willing to make that available, do you really want them in public office?" *Id.* at 9:23–25.

During the same meeting, Kerrie Stillman, the Executive Director of the COE, stated that, despite discussions in prior sessions of imposing a fluctuating standard on officials who should abide by Form 6, the Commission nonetheless adopted the standard for all municipal elected officials and candidates. *Id.* at 16:1–5. According to Stillman, the requirement furthers transparency, and, as Stillman explained, citizens who live in smaller communities are entitled to no less transparency than those in larger communities as neither is immune to corruption. *Id.* at 16:6–13. Stillman also pointed out that the new requirement helps avoid conflicts of interest. *Id.* at 16:14–16. Notably, a Committee member asked Ms. Stillman the purpose behind letting local officials file Form 1 over the years, and Ms. Stillman responded that she did not know the specific history behind Form 1. *Id.* at 18:6–12. The bill was voted out of the Ethics and Elections Committee and transferred to the Rules Committee. *See CS/CS/SB 774 Bill History*, https://www.flsenate.gov/Session/Bill/2023/774/?Tab=BillHistory (last visited May 20, 2024) [hereinafter, *SB 774 Bill History*].

### 5. *Senate Rules Committee March 2023 Meeting.*

On March 30, 2023, the Rules Committee held a meeting in which the bill was discussed. *See generally* Ex. J18.[6] As he did in the March 14 meeting, Senator Brodeur spoke about the requirements of SB 774 and described the differences between the Form 1 and Form 6 requirements. *Id.* at 3:2–8, 5:22–25, 6:1–10. Once more, Senator Brodeur reiterated the imbalance between the number of individuals making impactful decisions in municipal government versus the greater number of individuals involved in making those decisions at the state level. *Id.* at 6:12–25, 7:1. A Committee member asked if Senator Brodeur would consider amending the bill to exempt officials from towns with populations under certain amounts. *Id.* at 8:10–13, 20–21. Senator Brodeur responded that he would not, underscoring the need for transparency at any level of state and local governance. *Id.* at 8:23–25, 9:1–3. Ms. Stillman also appeared at the meeting and again emphasized that the bill would further public transparency, increase public trust in government, and help identify potential conflicts of interest. *Id.* at 15:13–19. The bill was voted out of the Rules Committee. *See SB 774 Bill History*.

### 6. *Senate Floor Debate In April 2023.*

During the Senate floor debate held on April 11, 2023, a Senator expressed concern that the bill would have a chilling effect on people running for local office. Ex. J19(a) at 7:1–10. Senator Brodeur pointed out that the Form 6 disclosure requirements had already been in place for a number of state officials and at varying levels of government and that despite the disclosure requirement, individuals still ran for local office. *Id.* at 7:23–25, 8:1–6. There was

---

[6] *See also* Fla. S. Comm. on Rules, recording of proceedings (Mar. 30, 2023, 8:30 AM), https://www.flsenate.gov/media/VideoPlayer?EventID=1_nty0d3lq-202303300830&Redirect=true (last visited May 19, 2024).

further debate on SB 774 the next day. This time, a different Senator remarked about the bill's potentially chilling effect, and Senator Brodeur responded that the COE had been working on the measure for a long time and again opined that the law would not discourage people from running. Ex. J19(b) at 2:17–25, 3:10–15.[7] He did not offer any empirical data or studies to support his opinion. SB 774 passed in the Florida Senate by a vote of 35 to 5. *See SB 774 Bill History*.

### 7.  *House of Representatives Floor Debate in April 2023.*

The bill proceeded to the Florida House of Representatives, which held its first reading of the bill on April 20, 2023, without discussion. *See id.* Although the bill's House sponsor recognized during the bill's second reading on April 25, 2023, that the requirements of Form 6 may be "too intrusive," he went on to state that the "bill simply seeks to have the local elected official do the Form 6 the same as we do." Ex. J20 at 7:1–8.[8] SB 774 moved on to a third reading in the House on April 26, 2023. *See SB 774 Bill History*. It passed in the House by a vote of 113 to 2. *Id.*

### 8.  *The Enactment Of SB 774.*

On May 11, 2023, the Governor signed SB 774 into law. [ECF No. 19 at 4]. Between the enactment of SB 774 and its effective date of January 1, 2024, approximately 125 municipal elected officials resigned. *Id.* at 5. As it presently stands, municipal elected officials

---

[7]  *See also* Fla. S. Floor Debate (April 12, 2023, 3:00 PM), https://www.flsenate.gov/media/VideoPlayer?EventID=1_nty0d3lq-202304121500&Redirect=true (last visited May 19, 2024).

[8]  *See also* Fla. H. Floor Debate (April 25, 2023, 10:00 AM), https://www.myfloridahouse.gov/VideoPlayer.aspx?eventID=8900 (last visited May 19, 2024).

and candidates must comply with SB 774 by submitting Form 6 by July 1, 2024. § 112.3145(2)(b), Fla. Stat. (2023). They will be subject to penalties sixty (60) days later if they fail to comply. *See* § 112.3144(8)(f), Fla. Stat. (2023).

## PROCEDURAL HISTORY

### A. The Complaint.

On February 15, 2024, Plaintiffs, then consisting of more than 150 elected officials of municipalities existing under the laws of the State of Florida, filed a Complaint against Defendants, members of the COE charged with implementing and enforcing Florida's financial disclosure laws. *See generally* ECF No. 1 ("Complaint"). The Complaint asserts a single claim for violation of 42 U.S.C. § 1983 on grounds SB 774 compels content-based, non-commercial speech in violation of the First Amendment of the United States Constitution. *See generally id.*

Plaintiffs filed a First Amended Complaint on March 22, 2024. [ECF No. 9]. On April 17 and May 7, 2024, Plaintiffs moved for leave to further amend the First Amended Complaint by interlineation to include additional municipal elected officials, and the Court granted the Motions on April 19 and May 13, 2024. *See* ECF Nos. 24, 26, 36, 37. Plaintiffs filed a Second Amended Complaint on May 17, 2024, which is the operative complaint. [ECF No. 38 ("Second Amended Complaint")]. Every iteration of Plaintiffs' Complaints asserts the same solitary claim; the only changes since the original Complaint have been the inclusion of additional municipal elected officials as named plaintiffs. These additions brought the total number of plaintiffs to well over 170 elected officials of municipalities as of the signing of this Order.

### B.  The Motion For Preliminary Injunction.

#### 1.  The Motion.

On March 22, 2024, Plaintiffs filed the Motion for Preliminary Injunction now before the Court. [ECF No. 10]. In the Motion for Preliminary Injunction, Plaintiffs assert there is a substantial likelihood of success on the merits of their claim because SB 774 compels content-based speech and is, therefore, subject to strict scrutiny review. Plaintiffs further argue the law is not narrowly tailored nor the least restrictive means to serve compelling government interests. Specifically, while acknowledging that protecting against conflicts of interest and deterring corruption are compelling government interests, Plaintiffs argue that SB 774 is not narrowly tailored to achieve these interests. Plaintiffs contend the legislative record is devoid of empirical examples, expert studies, or analyses evincing that other alternative and less restrictive means were seriously considered. *See generally* Mot. at 14–19. Plaintiffs thus allege SB 774 violates the First Amendment and causes irreparable injury. *See* Mot. at 19.

Citing *Otto v. City of Boca Raton*, 981 F.3d 854, 870 (11th Cir. 2020), Plaintiffs argue that "[i]t is clear that neither the government nor the public has any legitimate interest in enforcing an unconstitutional [law]." Mot. at 19. Noting the numerous recent resignations of municipal officials since SB 774's enactment, Plaintiffs also allege there "is a strong public interest in ensuring that the continuing existence and enforcement of SB 774 not unreasonably or unnecessarily deter governmental service." Mot. at 19–20. Plaintiffs also argue the First Amendment violation is a *per se* irreparable injury. *Id.* at 19.

Finally, Plaintiffs posit they should not be required to post an injunction bond because "public interest litigation is a recognized exception to the bond requirement." Mot. at 20

(quoting *Vigue v. Shoar*, No. 3:19-CV-186-J-32JBT, 2019 WL 1993551, at *3 (M.D. Fla. May 6, 2019)).

### 2. *Defendants' Response.*

In their Response to the Motion for Preliminary Injunction, Defendants do not challenge nor disagree with whether SB 774 implicates the First Amendment. Instead, Defendants insist Plaintiffs' First Amendment challenge is not subject to strict scrutiny review but is subject to the less rigorous level of "exacting scrutiny," which requires a substantial relation between the law and the compelling government interests, as opposed to a showing that the law is the least restrictive means of addressing the compelling government interests. *See* Resp. at 3–6. Defendants then argue that Plaintiffs have not established a substantial likelihood of success because they failed to argue a lack of substantial relation between the financial disclosure requirements of Form 6 and the government interests at stake. *Id.*

Citing the 2023 Annual Report's finding that there has been a "steady, upward trend" of the number of ethical complaints, Defendants argue that a substantial relation exists between the Form 6 requirements and compelling government interests. Defendants aver that the COE recommended imposing the Form 6 requirements on municipal elected officials and candidates based on these trends as "a narrowly tailored means of deterring corruption and conflicts of interest, bolstering the public's confidence in Florida officials, and educating the public." *Id.* at 8 (citing ECF No. 16-4 ¶ 9).

Defendants also assert that Plaintiffs have failed to allege a substantial threat of irreparable injury, based on the July 1, 2024, deadline, pointing to the 60-day grace period the officials have within which to file Form 6 before penalties are imposed. Resp at 12 (citing § 112.3144(8)(c), Fla. Sta. (2023)). Defendants further contend that the issuance of a

preliminary injunction would disrupt the status *quo* because approximately 127 elected municipal officials have already filed Form 6. According to Defendants, requiring municipal officials to file the less-comprehensive Form 1 from now on would confuse the public and frustrate the compelling government interests that Form 6 is meant to address. Resp. at 12–13. Finally, Defendants disagree with Plaintiffs regarding the bond requirement and argue that a bond should be required if an injunction is ordered.

### 3.  *Plaintiffs' Reply.*

In their Reply in Support of the Motion for Preliminary Injunction [ECF No. 18], Plaintiffs argue that although courts have referred to the "exacting scrutiny" standard in compelled, content-based non-commercial speech cases, the substantive analysis in even those cases nonetheless involves a strict scrutiny review. Reply at 2–3. Plaintiffs point out that Defendants do not dispute that Form 6 compels content-based, non-commercial speech and argue that regardless of which standard applies, SB 774 fails under both the strict scrutiny and exacting scrutiny analyses. According to Plaintiffs, even if the law does not have to be the *least restrictive* means to further the governmental interest at stake, the government is still obligated to consider *less intrusive* alternatives, and Defendants have failed to demonstrate *any* relationship between the identified interests of protecting against the abuse of the public trust and the change to or need for the more fulsome financial disclosure requirements mandated by SB 774. Reply at 3, 5–6.

Plaintiffs also challenge the bases proffered by Defendants in support of the need for Form 6. Specifically, Plaintiffs point to the record referred to by Defendants as the "steady, upward trend" in the number of ethics complaints and contend that the record actually reveals that, in the five years prior to SB 774's enactment, the total number of complaints has been in

13

the same range each year and that the number of complaints against municipal elected officials in 2022 was actually lower than in any of the previous four years. Reply 7–8. Plaintiffs also dispute Defendants' suggestion that the elected municipal officials may be more susceptible to corruption if they are wealthier, noting Defendants offer no analysis or data to support such a claim. *Id.* at 8–9. And, Plaintiffs argue that Defendants have altogether failed to demonstrate a substantial relationship between the interests at stake and the change to the heightened disclosure requirements of Form 6 *vis-a-vis* the previously required disclosure requirements of Form 1. *Id.* at 9.

Finally, Plaintiffs argue that the loss of First Amendment freedoms, even where minimal, constitutes irreparable injury and that the true "status *quo*," as argued by Defendants, is not the new law as enacted but, rather, the financial disclosure requirement applicable to municipal elected officials in the nearly fifty years prior to SB 774's enactment. Plaintiffs also assert that Defendants ignore the case law providing that the bond requirement is waived "where the injunction was imposed against the continued enforcement of an unconstitutional law." *Id.* at 10 (citing *Vigue*, 2019 WL 1993551 at *2–3).

### 4. *The April 22, 2024, Hearing And Supplemental Briefs.*

The undersigned held a hearing on April 22, 2024, to address the Motion for Preliminary Injunction and take evidence. [ECF No. 27]. Defendants did not offer any additional evidence, studies, or data at the hearing. At the conclusion of the hearing, the Court directed Defendants to file supplemental briefing regarding the specific evidence in the legislative record that Defendants purport establishes a relationship between Form 6's additional financial disclosure requirements and the compelling government interests at stake. Defendants filed that briefing on May 1, 2024 [ECF No. 34 (the "Supplemental Brief")], and

Plaintiffs filed a Response to the Supplemental Brief on May 6, 2024 [ECF No. 35 (the "Supplemental Response")].

In their Supplemental Brief, Defendants argue, for the first time, that SB 774 does not implicate the First Amendment and that heightened scrutiny of the law is not warranted. Supp. Brief at 1–2. Defendants then persist in their previous contention that if the law does raise First Amendment concerns warranting heightened scrutiny, then, at most, exacting scrutiny applies. *Id.* at 3.

Defendants now argue that the Court should consider "history, [] substantial consensus, and simple common sense" to find that the State has sufficiently shown that the law is necessary to serve compelling state interests. *Id.* at 4 (citing *Burson v. Freeman*, 504 U.S. 191, 211 (1992)). According to Defendants, a "demonstrated history of financial disclosure laws" is evidence that such laws are effective in addressing the State of Florida's interest in preventing corruption, bolstering public confidence in government, promoting voter knowledge, and positively shaping the political community. *Id.* at 4.

Notably, although the Court's directive with regard to the Supplemental Brief was for Defendants to provide studies, data, reports, or empirical evidence supporting the need for the heightened disclosure requirements of SB 774, the Supplemental Brief includes none. Apparently conceding there is no evidence in the record to support the purported need for the change from Form 1 to Form 6, Defendants point to the multiple government interests at stake and claim that because the interests underlying SB 774 are the same as those underlying the original Sunshine Amendment, the legislature did not need to "waste time" rehashing those interests in Staff Analyses, Committees, or floor debates. *Id.* at 6. Thus, Defendants contend they relied on and the Court should consider the circumstances underlying the

passage of the Sunshine Amendment as the research, studies, and empirical evidence that support their claim that SB 774 was narrowly tailored to meet the interests at stake. *Id.* at 8–9.

In their Supplemental Response, Plaintiffs point out that Defendants failed to identify evidence in the legislative record to demonstrate that SB 774 was necessary, reasonably tailored, or substantially related to the identified government interests. *See* Supp. Resp. at 2–3. Plaintiffs then argue, as before, that Defendants have failed to establish a need for the change from the Form 1 to the Form 6 disclosure requirement. *Id.* at 3–4. That is, although the identified government interests justify the disclosure requirements presently in place (Form 1), Defendants have not identified a need for additional disclosure requirements based on evidence, data, or studies. Plaintiffs also argue that the Supreme Court's determination that it may rely on history in *Burson* does not apply here. And, even if the *Burson* exception does apply, history does not support or justify the need for the imposition of the added requirements of Form 6 from municipal officials over and above the Form 1 requirements previously in place. *Id.* at 4–8. Plaintiffs otherwise contend that Defendants' restatements of the governmental interests at stake are unavailing. *Id.* at 13.

The Court has carefully considered all of the parties' memoranda, authority, and supporting evidence.

## LEGAL STANDARD APPLICABLE TO PRELIMINARY INJUNCTIONS

To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex. rel*

*Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (per curiam) (citations omitted).

"[T]he third and fourth factors 'merge when, as here, the [g]overnment is the opposing party.'" *Messina v. City of Fort Lauderdale, Fla.*, 546 F. Supp. 3d 1227, 1237 (S.D. Fla. 2021) (Altman, J.) (second alteration in original) (internal quotation marks omitted) (quoting *Gonzalez v. Governor of Georgia*, 978 F.3d 1266, 1271 (11th Cir. 2020)).

"A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the four requisites." *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989) (quoting *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir.1983)). "[W]here facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue," district courts must hold an evidentiary hearing on the propriety of injunctive relief. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312 (11th Cir. 1998 (citing *All Care Nursing Serv.*, 887 F.2d at 1538). At that hearing, the court sits as factfinder. *See Four Seasons Hotels And Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1211 (11th Cir. 2003) ("Where conflicting factual information places in serious dispute issues central to a party's claims and much depends upon the accurate presentation of numerous facts, the trial court errs in not holding an evidentiary hearing to resolve these hotly contested issues." (cleaned up) (citation and quotation marks omitted)).

## ANALYSIS

### A. The Likelihood Of Success On The Merits.

Plaintiffs contend they are likely to succeed on the merits on the ground that SB 774's requirement that certain individuals file Form 6, as applied to Plaintiffs, is compelled, content-based, non-commercial speech in violation of the First Amendment because Defendants have

failed to show that SB 774's requirement that Plaintiffs file Form 6, as opposed to the previously required and less comprehensive Form 1, is the least restrictive means of addressing the government interests at stake. And, even if Defendants are only required to demonstrate a substantial relationship between SB 774's Form 6 requirement and the government interests, they have failed to do that as well. As set out above, Defendants now contend that the law does not implicate the First Amendment and that even if it did, Plaintiffs have not demonstrated a likelihood that they will succeed in establishing a First Amendment violation because Defendants have shown a substantial relation between the law and the government interests at stake.

In assessing whether the law likely violates the First Amendment, the Court must initially consider whether it triggers First Amendment scrutiny in the first place—*i.e.*, whether it regulates "speech" within the meaning of the Amendment at all. *See Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1254 (11th Cir. 2021). In other words, the Court must determine whether the compelled disclosure of detailed financial information by candidates for elected office is First-Amendment-protected activity. If it is, then the Court must proceed to determine what level of scrutiny applies and whether the law's provisions survive that scrutiny. *See Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale* ("*FLFNB II*"), 11 F.4th 1266, 1291 (11th Cir. 2021).

### 1. *Whether SB 774 Implicates The First Amendment.*

The First Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, prescribes that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. One of the most basic principles of the freedom of speech is that "[t]he Free Speech Clause of the First Amendment constrains

governmental actors and protects private actors." *NetChoice, LLC v. Att'y Gen., Fla.*, 34 F.4th 1196, 1203 (11th Cir. 2022)[9] (quoting *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 804 (2019)). It is well established that this protection "includes both the right to speak freely and the right to refrain from speaking at all." *McClendon v. Long*, 22 F.4th 1330, 1336 (11th Cir. 2022) (quoting *Wooley v. Maynard*, 430 U.S. 705, 714 (1977)). Thus, a statute compelling speech, as with a statute forbidding speech, falls within the purview of the First Amendment. *See Wooley*, 430 U.S. at 714 ("The right to speak and the right to refrain from speaking are complementary components of the broader concept of 'individual freedom of mind.'"); *see also VoteAmerica v. Raffensperger*, 609 F. Supp. 3d 1341, 1359 (N.D. Ga. 2022) (observing that "courts focus[] in part on the fact that the compelled messages altered the content of the plaintiffs' speech and forced them to convey a message that they would not otherwise communicate").

The Supreme Court has held that the creation and dissemination of information are speech within the meaning of the First Amendment. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) ("[I]f the acts of 'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does fall within that category, as distinct from the category of expressive conduct" (citing *Bartnicki v. Vopper,* 532 U.S. 514, 527 (2001))); *see also Rubin v. Coors Brewing Co.,* 514 U.S. 476, 481 (1995) ("information on beer labels" is speech); *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 759 (1985) (credit report is "speech"). As the *Sorrell* Court explained, "Facts, after all, are the beginning point for much of the speech

---

[9] *Cert. granted in part sub nom. Moody v. NetChoice, LLC*, 144 S. Ct. 478 (2023), and *cert. denied sub nom. NetChoice, LLC v. Moody*, 144 S. Ct. 69 (2023).

that is most essential to advance human knowledge and to conduct human affairs." 564 U.S. at 570.

Although they originally agreed that the challenged law is subject to First Amendment scrutiny, in their Supplemental Brief, Defendants contend that there is no legal authority supporting Plaintiffs' claim that SB 774 implicates the First Amendment. Supp. Brief at 1. Defendants' new contention is not well taken for several reasons. First, they likely waived that argument by failing to raise it in their initial Memorandum and then failing to seek leave of Court to inject it into the Supplemental Brief.[10] Second, by asserting this new theory, Defendants are directly contradicting their own positions, arguments, and authority relied on in their Response to the Motion for Preliminary Injunction, in which they argue that Plaintiffs' claims are subject to exacting scrutiny review because they are challenging disclosures under the First Amendment and never once suggest the challenged law does not fall within the First Amendment. *See generally* Response. Third, they, at best, ignore Plaintiffs' Motion (and, at worst, misrepresent what it says) when stating that Plaintiffs offer no authority for the claim that the compelled disclosure of financial information at issue here implicates First Amendment scrutiny. Plaintiffs' Motion cites ample authority to support that view. It is Defendants who rely on no authority in support of the contrary view, save for a 1978 decision from the former Fifth Circuit that does not address the question of whether compelled disclosure of information is subject to First Amendment protection and that predates a long line of Supreme Court and Eleventh Circuit precedent holding that it does. *See, e.g.*, Supp. Brief at 2–3 (citing *Plante v. Gonzales*, 575 F.2d 1119 (5th Cir. 1978)).

---

[10] *See In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived.").

In any event, based on the authority set forth above, this Court finds that where, as here, a law compels disclosure of financial information the speakers would not otherwise have disclosed, the law burdens speech and does fall within the purview of the First Amendment. Thus, the Court next considers what level of scrutiny applies.

### 2. Whether Strict Scrutiny Or Exacting Scrutiny Applies.

The level of scrutiny the Court must impose in evaluating the constitutionality of a law that compels speech typically depends on whether the law is content-based or content neutral. "[A] content-neutral regulation of expressive conduct is subject to intermediate scrutiny, while a regulation based on the content of the expression must withstand the additional rigors of strict scrutiny." *NetChoice*, 34 F.4th at 1223 (quoting *FLFNB II*, 11 F.4th at 1291; and citing *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 643–44, 662 (1994)).

To determine whether a law is content-based, courts consider whether the law "suppress[es], disadvantage[s], or impose[s] differential burdens upon speech because of its content," *Turner*, 512 U.S. at 642—*i.e.*, if it "applies to particular speech because of the topic discussed or the idea or message expressed," *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). A law can be content-based either because it draws "facial distinctions . . . defining regulated speech by particular subject matter" or because, though facially neutral, it "cannot be justified without reference to the content of the regulated speech." *Id.* at 163–64 (internal quotation marks omitted) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). In *Riley v. Nat'l Federation of the Blind*, 487 U.S. 781, 795 (1988), the Supreme Court held, "Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech. We therefore consider the [disclosure requirement] as a content-based regulation of speech."

Importantly, "[l]aws that are *content neutral* are . . . subject to lesser scrutiny" than strict scrutiny. *Reed*, 576 U.S. at 172.

As in *Riley*, the Court finds that SB 774, which mandates speech (the disclosure of information) the speakers would not otherwise make, alters the content of their speech and is, therefore, a content-based government regulation of speech subject to higher scrutiny than content-neutral speech.

Content-based compelled speech regulations are, ordinarily, subject to a standard of scrutiny more demanding than rational basis and intermediate scrutiny. As Defendants point out, there is a substantial body of Supreme Court precedent dictating that disclaimer and disclosure requirements are subject to exacting scrutiny. Notably, a review of cases applying the strict scrutiny and exacting scrutiny standards reveals that a content-based regulation compelling speech that fails to pass constitutional muster under exacting scrutiny necessarily fails strict scrutiny. *See, e.g.*, *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 622 (2021) (Alito and Gorsuch, J. concurring). Because the parties dispute the applicable level of scrutiny, the Court briefly discusses the two levels of scrutiny at issue below.

Strict scrutiny, which has historically been applied to the analysis of laws compelling content-based speech, "requires the Government to prove that the [regulation] furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 576 U.S. at 171. However, as noted above, the Supreme Court has enunciated a different standard in cases involving compelled disclosures of information. For example, in *Citizens United v. Federal Election Commission*, 558 U.S. 310, 366–67 (2010), the Supreme Court expressed that disclaimer and disclosure requirements should be subject to exacting scrutiny, "which requires a 'substantial relation' between the disclosure requirement and a 'sufficiently

important' governmental interest." (quoting *Buckley v. Valeo*, 424 U.S. 1, 64, 66 (1976)). In *Janus v. American Federation of State, County, & Municipal Employees, Council 31*, 585 U.S. 878, 894 (2018), the Court applied the exacting scrutiny standard in the context of compelled subsidization of private speech. As the Court explained, "Under 'exacting' scrutiny, . . . a compelled subsidy must 'serve a compelling state interest that cannot be achieved through'" significantly less restrictive means. *Id.* at 894 (quoting *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 310 (2012)). In doing so, the Court pointed out that this standard is "a less demanding test than the 'strict' scrutiny." *Id.* More recently, however, the Court recognized in *Americans for Prosperity Foundation v. Bonta*, that "while exacting scrutiny does not require that disclosure regimes be the least restrictive means of achieving their ends, it *does* require that they be narrowly tailored to the government's asserted interest." 594 U.S. at 608 (emphasis added).

While there does not appear to be any binding precedent dictating the correct standard to apply in the specific circumstances presented in this case, the undersigned finds that the circumstances presented here fall within the body of cases in which the Supreme Court has consistently applied the exacting scrutiny standard—that is, cases involving the compelled disclosure of information. Nevertheless, because the Court finds that the law at issue here satisfies neither standard, this Court need not decide which one applies. The exacting scrutiny test is the less burdensome of the tests, and, as Justices Alito and Gorsuch observed in their concurring opinion in *Bonta*, if the law fails to pass muster under the exacting scrutiny test, it necessarily fails under strict scrutiny. *Id.* at 622. Therefore, this Court will apply exacting scrutiny to the analysis of SB 774.

Importantly, to satisfy exacting scrutiny, the government must "demonstrate its need . . . in light of any less intrusive alternatives" and is not "free to enforce any disclosure regime that furthers its interests." *Id.* at 613. Further, "the Supreme Court has held that a governmental entity bears the evidentiary burden of demonstrating that it 'seriously undertook to address the problem with less intrusive tools readily available to it.'" *Messina*, 546 F. Supp. at 1251 (quoting *McCullen v. Coakley*, 573 U.S. 464, 494 (2014)). In other words, the government cannot demonstrate it seriously undertook to address the compelling interest by way of less intrusive means without first *considering* those less intrusive means. The government can satisfy this burden by pointing to the legislative record where it undertook the consideration of less intrusive means—*i.e.*, by pointing to evidence that "it investigated, studied, or even solicited reports on the issue." *Messina*, 546 F. Supp. 3d at 1251.

Applying the exacting scrutiny standard, this Court thus considers whether SB 774 is substantially related to a compelling state interest, which, as discussed above, requires the State to demonstrate that it considered whether there were less intrusive means available to achieve those state interests.

### 3.   *Whether Plaintiffs Have Demonstrated A Substantial Likelihood of Success On The Merits Of Their Claim That SB 774 Fails Exacting Scrutiny.*

The Court now turns to the question of whether Plaintiffs have clearly established a substantial likelihood of success on their claim that SB 774 does not survive exacting scrutiny.

a.   <u>Compelling Government Interests</u>.

Initially, the Court notes that, as discussed above, the parties agree that SB 774's goals of deterring corruption, increasing transparency and public trust in government, and avoiding conflicts of interest all constitute compelling state interests. The Court agrees that these interests constitute compelling interests, and, in fact, these interests justified the need for the

Sunshine Amendment nearly fifty years ago. While these interests remain no less compelling now, it is not clear from the record before the Court that these interests compel a change to increased disclosure requirements for Plaintiffs. In any event, this Court is satisfied that compelling government interests are at stake.

        b.    <u>Consideration Of Less Intrusive Alternatives To Address The Government Interests At Stake</u>.

The next part of the exacting scrutiny inquiry is the determination of whether Defendants have demonstrated that they seriously undertook to address the compelling government interests advanced by SB 774's Form 6 disclosure requirement by less intrusive means. Phrased differently, the Court considers whether Defendants have justified the need for SB 774's new, more comprehensive Form 6 disclosure requirements for municipal elected officials and candidates and have even considered whether the use of the less intrusive Form 1 requirement previously in place (or any other less burdensome requirement) is inadequate. To prevail here, Defendants need to point to where in the legislative record it is evident that the State seriously undertook consideration of less intrusive alternatives. *See Sable Commc'ns of California, Inc. v. F.C.C.*, 492 U.S. 115, 129 (1989) (the legislative record must include sufficient findings to justify the court's conclusion that there are no acceptable less restrictive means to achieve the compelling government interests at stake). After a thorough and careful consideration of the record, this Court concludes that Defendants have failed to establish that the State seriously undertook the consideration of less intrusive means to address the identified interests.

Defendants have not demonstrated the need for SB 774's heightened disclosure requirements for municipal elected officials and candidates by showing, for example, that the disclosure requirements previously in place (Form 1) were not adequate. This conclusion is

borne out by the absence of any evidence, data, or studies in the legislative record indicating that Form 1's disclosure requirements were inadequate to address the compelling interests at stake here (deterring corruption and conflicts of interest, bolstering public confidence in state government, and educating the public). At the April 22 evidentiary hearing, the Court expressly directed Defendants to supplement the Court record with evidence that the State considered other means to address the identified issues. In their Supplemental Brief, Defendants provide no such evidence.

So too, this Court's review of the various Committee meeting notes and Analyses and transcripts of hearings and debates in the Florida Senate and House of Representatives revealed none. The Analyses, while detailed and thorough, lack any evidence of a justification or reason for the change from Form 1 to Form 6 and lack any evidence that a less intrusive alternative was seriously considered. To the contrary, it is not at all clear from the legislative record that anyone had determined that Form 1 was not adequately addressing the State interests or, if it was not, that anyone gave any serious consideration to whether a less intrusive alternative to Form 6 might address the State's concerns.

The legislative record reveals that the justifications behind SB 774's enactment are that it conforms the financial disclosure requirements of municipal elected officials and candidates to the disclosure requirements of elected state constitutional officers and that the more rigorous disclosure requirements have been requested by the COE for "many years." Ex. J17 at 2:5–11, 6:15–21; *see also* Ex. J19(b) at 2:17–25, 3:10–15. What it does not show is that the law was necessary or substantially related to the interests at stake. And, although raised, less intrusive alternatives were summarily, and without explanation, shot down in favor of SB 774's brightline standard for *all* municipal elected officials and candidates. *See* Ex. J17 at 16:1–

5; Ex. J18 at 8:10–13, 20–21, 8:23–25, 9:1–3. As Plaintiffs correctly point out, the COE's Annual Reports are also devoid of empirical data or evidence suggesting that the COE investigated, studied, or solicited reports regarding the need for the Form 6 disclosure requirements for these municipal officials. Even if it were true that complaints against public officials are on the rise, this does not serve as evidence that SB 774's comprehensive disclosure requirements are substantially related to those complaints or that a less burdensome measure could not be used to address these concerns.

Thus, this Court is not satisfied that Defendants have identified any part of the record that demonstrates that they seriously undertook to address the compelling government interests advanced by SB 774's Form 6 disclosure requirement by less intrusive means.

c.     History, Substantial Consensus, and Common Sense.

Defendants rely on the *Burson* opinion for the proposition that "history, [] substantial consensus, and simple common sense," 504 U.S. at 211, sufficiently demonstrate that SB 774 is necessary to serve legitimate and substantial state interests. Defendants' reliance on *Burson* is misplaced. The issue before this Court is not whether the State of Florida is justified in requiring public officials to comply with financial disclosure requirements. Plaintiffs do not dispute that it is. Indeed, history, substantial consensus, and common sense all dictate that financial disclosure requirements for public officials are justified and necessary. Florida's Sunshine Amendment has been in place since 1976, and Plaintiffs are not suggesting that the law is not warranted or justified. This Court finds, therefore, that *Burson* does not excuse the State from justifying the changes put in place by SB 774.

Instead, the issue now before this Court is whether the change effected by SB 774, requiring municipal officials to file Form 6 after more than forty years of filing Form 1, is

substantially related to the compelling interests identified by the State. The record before this Court does not demonstrate that any change to the disclosure requirements for municipal officials is necessary at all, much less that the highly intrusive level of change effected by SB 774 was necessary when less alternative means were not even considered. *See Bonta*, 594 U.S. at 609 (quoting *Shelton v. Tucker*, 364 U.S. 479, 488 (1960)). As stated above, Defendants have not demonstrated a relationship between the interest of protecting against the abuse of the public trust and SB 774's fulsome financial disclosure requirements, and history does not support or justify the need for requiring municipal elected officials and candidates to comply with the Form 6 requirements when Form 1, a less intrusive method, is available and has not been shown to be ineffective or inadequate.

Accordingly, for the reasons stated above, the undersigned finds that Plaintiffs have demonstrated a reasonable likelihood that they will succeed on the merits of their claim.

**B. Whether Plaintiffs Will Suffer Irreparable Harm.**

Defendants contend that Plaintiffs fail to demonstrate a substantial threat of irreparable injury because SB 774 provides for a 60-day grace period to file Form 6 before penalties are imposed. In so arguing, Defendants ignore precedent, cited by Plaintiffs, holding that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1271–72 (11th Cir. 2006) (quoting *Elrod v. Burs*, 427 U.S. 347, 373 (1976)).

Based on this precedent, this Court finds that because SB 774's Form 6 disclosure requirements on municipal elected officials and candidates likely unconstitutionally compels content-based speech, continued enforcement, for even minimal periods of time, constitutes a *per se* irreparable injury. The Court also finds unpersuasive Defendant's argument that the

grace period before penalties are imposed somehow means Plaintiffs are not harmed by the law in light of the fact they are already required to comply with the law. As Defendants point out, at least 127 officials have already done so. In fact, the record shows that the law has already had a chilling effect on officials in municipal office, as evidenced by the approximately 125 resignations between the enactment of SB 774 and its effective date. *See* ECF No. 19 at 5.

Therefore, this Court finds that Plaintiffs have demonstrated that they will suffer irreparable harm if an injunction is not granted.

**C. Whether The Threatened Injury Outweighs The Potential Harm From An Injunction And Whether An Injunction Serves The Public Interest.**

As stated above, when the government opposes the issuance of a preliminary injunction, the third and fourth requisites for injunctive relief merge. *See Otto*, 981 F.3d at 870; *see also Messina*, 546 F. Supp. 3d at 1254. Thus, "a temporary infringement of First Amendment rights 'constitutes a serious and substantial injury,' whereas 'the public, when the state is a party asserting harm, has no interest in enforcing an unconstitutional law.'" *Messina*, 546 F. Supp. 3d at 1253–54 (quoting *Scott v. Roberts*, 612 F.3d 1279, 1297 (11th Cir. 2010)). The Court agrees with Plaintiffs that, in light of the recent resignations of numerous municipal officials affected by SB 774, it is crucial to prioritize the public interest by ensuring that SB 774's ongoing existence and enforcement not unnecessarily discourage more people from serving in government roles. Defendants offer little to rebut the showing of irreparable harm from the enforcement of SB 774. Their argument that an injunction will upset the status *quo* is unavailing, as Plaintiffs contend, because the status *quo* is the forty years preceding the enactment of SB 774 rather than the five months since it went into effect.

Accordingly, Plaintiffs have also met the third and fourth requirements for injunctive relief. The Court finds Plaintiffs have clearly established their burden of persuasion as to the four requisites for injunctive relief.

**D. The Appropriate Scope Of The Injunction**.

Having determined that an injunction is warranted, the Court next considers the appropriate scope of the injunction. Although Defendants argue that Plaintiffs' Motion for Preliminary Injunction should be denied altogether, they contend, in the alternative, that "[i]njunctive relief should be limited in scope to the extent necessary to protect the interests of the parties." Resp. at 13 (quoting *Keener v. Convergys Corp.*, 342 F.3d 1264, 1269 (11th Cir. 2003); and citing *Thomas v. Bryant*, 614 F.3d 1288, 1317–18 (11th Cir. 2010)). Defendants also point to the decision in *Garcia v. Executive Director, Florida Commission on Ethics*, No. 23-12663, ECF No. 36 (11th Cir. Nov. 30, 2023), in which the Eleventh Circuit recently stayed enforcement of a preliminary injunction order because the district court did not explain the need to extend the preliminary injunction beyond the single plaintiff in that case.

In their Reply, Plaintiffs respond that the injunction should apply statewide because SB 774 compels all municipal officials throughout the State to file a Form 6 and the unconstitutionality of the law is not dependent on facts unique to Plaintiffs. Reply at 11 n.8 (citing *Rodgers v. Bryant*, 942 F.3d 451, 457–58 (8th Cir. 2019)).

Initially, this Court observes that *Keener* is not determinative of the issue before it, at least insofar as Defendants rely on it to prevent a statewide injunction. In *Keener*, the Eleventh Circuit reversed the district court's injunction only to the extent it applied nationwide but affirmed the injunction to the extent it applied statewide. *See* 342 F.3d at 1269. Likewise, the *Garcia* decision offers little support for Defendants because in that case, there was only one

Plaintiff and, as the Eleventh Circuit pointed out, the district court did not explain why the injunction should apply statewide. *Garcia*, No. 23-12663, ECF No. 36 at 2–3.

"Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assist. Project*, 582 U.S. 571, 579 (2017). This Court is mindful of the "national conversation taking place in both the legal academy and the judiciary concerning the propriety of courts using universal injunctions as a matter of preliminary relief," recognized by my colleague in the Southern District of Florida in weighing the propriety of a statewide preliminary injunction. *See Farmworker Ass'n of Fla., Inc. v. Moody*, No. 23-CV-22655 (S.D. Fla. May 22, 2024), ECF No. 101 at 1 (Altman, J.) (quoting *Walls v. Sanders*, No. 4:24-CV-00270-LPR, 2024 WL 2127044, at *22 (E.D. Ark. May 7, 2024)).

Under the circumstances presented in the instant case, this Court finds that statewide injunctive relief is warranted. As Plaintiffs point out, the law requires compliance by all municipal officials throughout the State, regardless of their specific circumstances. Moreover, a preliminary injunction limited only to the Plaintiffs who have joined this case so far would engender needless follow-on litigation. Because the injunction is not based on facts limited to Plaintiffs' circumstances, all of the other municipal officials subject to this law will be able to file near-identical suits to obtain the same relief. *See, e.g., Koe v. Noggle*, 688 F. Supp. 3d 1321 (N.D. Ga. 2023) (refusing to grant an injunction only as to the plaintiffs because, "if a plaintiffs-only injunction issued, follow-on suits by similarly situated non-plaintiffs based on this [c]ourt's order could create needless and 'repetitious' litigation," and because "affording [p]laintiffs complete relief without a facial injunction would be, at best, very burdensome for [p]laintiffs and the [c]ourt [and,] [a]t worst, . . . practically unworkable"). This reality is readily

apparent from the fact that Plaintiffs have already amended the Complaint in this case three times to add additional plaintiffs. And, as noted above, Defendants offer no persuasive authority for why statewide application of the injunction is not appropriate in this case.

For the reasons set forth above, this Court finds that statewide application of the injunction is appropriate.

**E. Whether Plaintiffs Must Post an Injunction Bond.**

Plaintiffs submit that they should not be required to post an injunction bond because "public interest litigation is a recognized exception to the bond requirement." Mot. at 20 (quoting *Vigue*, 2019 WL 1993551 at *3). Defendants offer no contrary authority. The Court agrees that "public-interest litigation [constitutes] an area in which the courts have recognized an exception to the Rule 65 security requirement." *City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. 1981). Therefore, under the circumstances presented here, the bond requirement should and will be waived.

## CONCLUSION

In sum, a review of the record reflects that the State enacted SB 774 without giving serious consideration to whether the government interests at stake could be addressed through less burdensome alternative means. It is not apparent from the record that a change from the Form 1 requirement to the Form 6 requirement was necessary nor that SB 774 is substantially related to the State's identified interests.

For the reasons set forth herein, the Court finds that Plaintiffs have satisfied their burden of establishing a reasonable likelihood of success on the merits of their claim that SB 774, as applied to them, impermissibly compels content-based speech in violation of the First

Amendment. Therefore, Plaintiffs are entitled to an injunction enjoining enforcement of SB 774.

Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Expedited Motion for Preliminary Injunction [ECF No. 10] is **GRANTED**.

2. SB 774 is **PRELIMINARILY ENJOINED**.

3. The posting of a bond is not required for enforcement of the relief herein.

4. Defendants must take no steps to enforce SB 774 unless otherwise ordered. This preliminary injunction binds Defendants and their officers, agents, servants, employees, and attorneys—and others in active concert or participation with them—who receive actual notice of this injunction by personal service or otherwise.

**DONE AND ORDERED** in the Southern District of Florida, this 10th day of June, 2024.

_____
**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**

CC: All Counsel of Record