**UNITED STATE DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

PRESIDENT OF TOWN COUNCIL ELIZABETH A. LOPER, elected official of the Town of Briny Breezes, *et al.*,

Plaintiffs,

Case No. 1:24-cv-20604-MD

vs.

ASHLEY LUKIS, in her official capacity as Chair of the Florida Commission on Ethics, *et al.*,

Defendants.
_______________________________________/

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, by and through their undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56(a) and Local Rule 56-1, file this motion for summary judgment, and, as support, state as follows:

## INTRODUCTION

This is an action by ***175 Florida elected municipal officials*** challenging a law ("SB 774") that compels all elected municipal officials in office as of and after January 1, 2024, to utter very specific statements, in writing and available to everyone in the world through the Internet, regarding their personal finances. But for the preliminary injunction entered by this Court [ECF No. 40], each of the Plaintiffs would have been compelled to make these statements on or before July 1, 2024 (and by July 1 of every year thereafter). The compelled statements would have included, among other things, stating the exact amount of their net worth and income, the total dollar value of their household goods, and the precise value of every asset and amount of every liability over $1,000, other than household goods. An elected municipal official's failure to make these written, public statements would result in significant fines, civil penalties, and potential removal from office.

Prior to the enactment of SB 774, elected municipal officials in Florida were required to provide more limited financial disclosures, including sources (but not amounts) of income, identification (but not values) of primary assets, and identification (but not amounts) of large liabilities, through a document called "Form 1." *See* Fla. Stat. § 112.3145. Section 112.3144, as

amended by SB 774, now mandates that all elected municipal officials file a "Form 6," which entails far more intrusive financial disclosures than those required in a Form 1. The speech compelled by SB 774 through Form 6 is undoubtedly content-based—municipal elected officials are required to say specific words and compliance with (or violation of) the law can be determined only by examining the content of the words uttered by the elected officials.

The United States Supreme Court has consistently held that a law that compels content-based, non-commercial speech is subject to a high level of scrutiny, described either as "strict scrutiny" or "exacting scrutiny." SB 774 cannot satisfy either level of scrutiny. The legislative record contained no empirical examples, expert studies, analysis, or other evidence showing that the additional financial disclosures required by Form 6 (*e.g.*, the disclosure of exact net worth, exact income, and precise values of household goods and other assets and liabilities), as compared to Form 1 (which required disclosure of sources, but not amounts, of income and identification, but not values or amounts, of assets and liabilities), have any bearing on municipal elected officials' public service or prevent (or even relate) to conflicts of interest or public corruption. The legislative record did not contain even one example of a situation where a public official's violation of conflict of interest or other ethics laws was discovered (or would have been discovered) or prevented through the additional financial disclosures made in a Form 6 as opposed to a Form 1.

The legislative record similarly shows that the Legislature never undertook to address conflict and corruption issues through less intrusive tools, such as continuing with Form 1, slightly modifying Form 1 to lower the threshold amounts for disclosure of sources of income and ownership of assets, or utilizing forms that have been successfully used in other states. There was no evidence in the legislative record that Form 1 disclosures were insufficient or that other less restrictive alternatives would not have adequately served the alleged compelling state interests.

Accordingly, on June 10, 2024, the Court entered a preliminary injunction enjoining defendants from enforcing SB 774 statewide. [ECF No. 40]. Despite having an opportunity to do so, Defendants did not appeal the entry of the preliminary injunction. Plaintiffs now seek a summary judgment (i) declaring that the portion of SB 774 that requires municipal elected officials and candidates to file a Form 6 rather than a Form 1 violates the First Amendment to the United States Constitution and is invalid, and (ii) permanently enjoining Defendants from enforcing that portion of SB 774.

## FACTUAL BASIS FOR SUMMARY JUDGMENT

The facts supporting Plaintiffs' motion for summary judgment are set forth in the Joint Statement of Undisputed Facts [ECF No. 56] and Plaintiffs' Statement of Material Facts [ECF No. 60].[1]

## ARGUMENT

### I. Freedom From Compelled Speech is Protected by the First Amendment.

The Free Speech Clause of the First Amendment, which is applicable to the states through the Fourteenth Amendment, provides that "Congress shall make no law ... abridging the freedom of speech." U.S. Const., amend. I. The Supreme Court has explained that the Free Speech Clause protects not only a person's right to speak freely but also shields the inverse—"the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). The prohibition against compelled speech is not limited to compelled statements of opinion or values—it applies equally to compelled statements of fact, as required by Form 6. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) (stating "the creation and dissemination of information are speech within the meaning of the First Amendment"). Thus, "compelled statements of fact" are accorded as much constitutional protection as "compelled statements of opinion" because "either form of compulsion burdens protected speech." *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 797–98 (1988) (applying First Amendment to compelled disclosure of the percentage of charitable contributions actually turned over to charity); *see also Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 573 (1995) (holding the "general rule[] that the speaker has the right to tailor the speech[] applies not only to expressions of value, opinion, or endorsement, but equally to statements of fact the speaker would rather avoid").

Here, Plaintiffs are forced by section 112.3144—as well as the threat of fines, penalties and other enforcement set forth in section 112.317, Florida Statutes—to engage in specific speech (namely, publicly disclosing to the public their exact net worth, income, asset values and other personal financial information required by Form 6). [*See* ECF No. 56 ¶¶ 7–8; ECF No. 56-2]. Thus, Plaintiffs' right not to be compelled to submit a Form 6 to the Commission on Ethics and

---

[1] Plaintiffs' Statement of Material Facts shall be referred to as "PSOF ¶ __".

communicate highly personal information falls under protected speech pursuant to the First Amendment.

**II. SB 774 Should be Subjected to a High Level of Constitutional Scrutiny.**

From the outset of this litigation, the parties have recognized that a high level of constitutional scrutiny should be applied to SB 774, with Plaintiffs contending that "strict scrutiny" applies [ECF No. 10 at 9–13; ECF No. 54 at 23–25], and Defendants contending that "exacting scrutiny" applies [ECF No. 15 at 3, 6; ECF No. 16 at 2, 4–5].[2] As argued below, *and as already found by the Court in the Preliminary Injunction Order*[3] [ECF No. 40], it does not matter which standard applies—Defendants cannot meet either test.

**A. SB 774 Should be Subjected to Strict Scrutiny.**

Laws that impinge upon the exercise of free speech can generally be divided into two general categories—content-based laws and content-neutral laws. *Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755, 766 (2018) ("*NIFLA*"). A content-based law is subject to

---

[2] Contradicting their repeated statements that exacting scrutiny applies in this case, Defendants oddly argued for the first time in their Supplemental Preliminary Injunction Briefing [ECF No. 34] that SB 774 does not implicate the First Amendment at all. This argument was rejected by the Court in the Preliminary Injunction [ECF No. 40 at 20–21] and, if asserted in connection with this Motion, should be rejected again because, as this Court ruled, "where, as here, a law compels disclosure of financial information the speakers would not have otherwise disclosed, the law burdens speech and does fall within the purview of the First Amendment." [ECF No. 40 at 21]; *see also NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1117 (9th Cir. 2024) (recognizing that it is "well-established that the forced disclosure of information … triggers First Amendment scrutiny") (citing *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011)).

[3] Although not binding, the Court's legal determinations in the Preliminary Injunction Order should direct and inform its determination of how to decide this Motion because Defendants did not appeal the Preliminary Injunction Order, there has been no new evidence presented since the entry of the Preliminary Injunction Order, and there has been no intervening change in the controlling law. *See, e.g., Arizona v. California*, 460 U.S. 605, 618 (1983) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."); *United States v. Uccio*, 940 F.2d 753, 757 (2d Cir. 1991) ("The court's exercise of its power to reconsider and modify its prior interlocutory rulings is informed by the second branch of the law-of-the-case doctrine . . . that when a [trial] court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case."); *In re Cone Constructors, Inc.*, 304 B.R. 513, 520 (Bankr. M.D. Fla. 2003) ("When a trial court has ruled on an issue, but the appellate court has not made a determination of that issue, the trial court's earlier decision should direct, but not limit, the court's determination of the issue at a subsequent stage.").

strict scrutiny and, as a result is "presumptively unconstitutional." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015); *see also Otto v. City of Boca Raton*, 981 F.3d 854, 868 n.6 (11th Cir. 2020) (observing that "[c]ases where th[e strict scrutiny] standard is met are few and far between" (collecting cases)). Meanwhile, a content-neutral restriction—regulations based on the time, place or manner of speech— "must withstand only intermediate scrutiny...." *Messina v. City of Fort Lauderdale*, 546 F. Supp. 3d 1227, 1237 (S.D. Fla. 2021) (quoting *McCullen v. Coakley*, 573 U.S. 464, 477 (2014)).

The Supreme Court in *Reed* made clear that a law that "expressly draws distinctions based on ... communicative content" is a facial content-based restriction. 576 U.S. at 165. "Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose." *Id.* at 163. "Both are distinctions drawn based on the message a speaker conveys...." *Id.* at 163–64. If a law is content-based on its face (like here), the Court's inquiry stops there, and the law is subject to strict scrutiny analysis, "***regardless*** of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech." *Id.* at 165 (emphasis added) (quotations omitted).[4] "[A] speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter." *Id.* at 169.

Here, the challenged law is content-based on its face because, "[b]y compelling individuals to speak a particular message," SB 774 "alter[s] the content of their speech." *See NIFLA*, 585 U.S. at 766 (quotations omitted).[5] Specifically, among other things, the newly mandated Form 6 requires all elected municipal officials, in writing and available to the world on the Internet, to:

---

[4] If a law does not facially restrict content, then a court would proceed to the second step of the *Reed* analysis—assessing whether the law can be "justified without reference to the content of the regulated speech" or whether the law was "adopted by the government because of disagreement with the message the speech conveys." 576 U.S. at 163 (alteration adopted) (quotations omitted). "Those laws, like those that are content based on their face, must also satisfy strict scrutiny." *Id.*

[5] As noted by Justice Breyer in his dissent in *NIFLA*, "[v]irtually every disclosure law could be considered 'content based,' for virtually every disclosure law requires individuals 'to speak a particular message.'" 585 U.S. at 782 (Breyer, J., dissenting); *see also Washington Post v. McManus*, 355 F. Supp. 3d 272, 296 (D. Md.) (stating the "general rule that compelled disclosure laws, like all content-based regulations, must overcome strict scrutiny"), *aff'd* 944 F.3d 506 (4th Cir. 2019) (affirming without deciding what level of scrutiny applies); *NetChoice, LLC*, 113 F.4th

- say the words "My Net Worth as of December 31, 2023 was $[AMOUNT],"
- say the words "The aggregate value of my household goods and personal effect[s] is ___,"
- describe and state the value or amount of all other assets and liabilities over $1,000, and
- identify every source of income in excess of $1,000, including the name and address of the source of income and the precise amount of the income (or, alternatively, to attach a copy of their federal income tax return, including all exhibits).

[ECF No. 56-2]. Thus, SB 774 restricts the freedom of a local elected official's speech by forcing the recital of a "government-drafted script" followed by specific financial information. *See NIFLA*, 585 U.S. at 766 (determining that a statute that requires licensed clinics to provide "a government-drafted script about the availability of state-sponsored services" is a content-based restriction on speech); s*ee also Masonry Bldg. Owners*, 394 F. Supp. 3d at 1297 ("By requiring URM building owners to speak a particular government-drafted message through placards, lease application disclosures, and acknowledgments, the Ordinance 'alters the content of their speech.'") (quoting *NIFLA*, 585 U.S. at 766); *Levine v. Fair Pol. Pracs. Comm'n*, 222 F. Supp. 2d 1182, 1190–91 (E.D. Cal. 2002) (granting a preliminary injunction on First Amendment grounds and finding that a California statute that imposed disclosure requirements on slate mailers was an impermissible content-based speech restriction).

---

at 1119–21 (determining that, in a challenge to a California law requiring businesses offering online services likely to be accessed by children to prepare a report identifying any risks of "material detriment to children" arising from the business's data-management practices, the district court "should have subjected the [statutory] report requirement to strict scrutiny . . . because the [statutory] report requirement (1) compels speech with a particular message about controversial issues, and (2) deputizes private actors into censoring speech based on its content"); *Masonry Bldg. Owners of Oregon v. Wheeler*, 394 F. Supp. 3d 1279, 1296 (D. Or. 2019) ("[A] regulation that compels a disclosure is a content-based regulation of speech, subject to heightened scrutiny, unless an exception applies."); Clay Calvert, *Selecting Scrutiny in Compelled-Speech Cases Involving Non-Commercial Expression: The Formulaic Landscape of A Strict Scrutiny World After Becerra and Janus, and A First Amendment Interests-and-Values Alternative*, 31 Fordham Intell. Prop. Media & Ent. L.J. 1, 112 (2020) ("Because compelled-speech mandates invariably require messages that relate to a particular topic or specific subject matter ... they are almost automatically subject to strict scrutiny under the methodology adopted by most courts.").

In addition, the compelled speech here is also content-based because compliance with (and enforcement of) the law can be determined only by examining the content of the words uttered by the municipal elected officials. *See, e.g., Reed*, 576 U.S. at 164 (finding "laws that cannot be 'justified without reference to the content of the regulated speech'" are considered content-based) (citation omitted). Once filed, any member of the public may access an official's Form 6 and then challenge the veracity of a particular disclosure by lodging a complaint with the Commission. [ECF No. 56-27 at 27:3-8]. "If a complaint ... alleges an error or omission on an annual CE Form 6 – Full and Public Disclosure of Financial Interests …, the Executive Director shall determine whether the complaint contains any allegations other than allegations of an immaterial, inconsequential, or de minimis error or omission on the disclosure form." Fla. Admin. Code § 34-5.002(4)(b); *see also* Fla. Stat. § 112.324(1). To determine whether there are any material omissions or errors and, if so, whether to initiate the complaint procedures of section 112.324, the Commission must review the Form 6 disclosure. *See* Fla. Stat. § 112.3144(11). Thus, under certain circumstances, the Commission will have to resort to reviewing the *content* of a Form 6 in deciding whether the disclosures were complete and accurate. *See Nat'l Ass'n for Gun Rts., Inc. v. Motl*, 188 F. Supp. 3d 1020, 1035 (D. Mont. 2016) (ruling that Montana's voting disclosure requirement is content-based on its face and finding that the statute's "disclosure requirement, as well as the requirement to provide a signed statement affirming that the information is accurate and true, are only triggered by a reference to a candidate's voting record").

Closely on point is the Supreme Court's decision in *Riley*. There, the Supreme Court considered a North Carolina law that required "professional fundraisers [to] disclose to potential donors, before an appeal for funds, the percentage of charitable contribution collected during the previous 12 months that were actually turned over to charity." *Id.* at 795. The Court held that the compelled disclosure of that information constituted a content-based regulation that was subject to strict scrutiny. *Id.* ("Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech. We therefore consider the Act as a content-based regulation of speech.").[6] North Carolina attempted to avoid strict scrutiny by asserting that the standard should

[6] Although the *Riley* Court labelled its form of constitutional scrutiny as "exacting scrutiny," its substantive analysis of the law in question involved, in reality, strict scrutiny, requiring "that government not dictate the content of speech absent compelling necessity, and then, only by means precisely tailored." 487 U.S. at 800. Indeed, the test applied in *Riley* has repeatedly been described

be different for compelled speech as opposed to compelled silence. The Court rejected the argument, stating: "There is certainly some difference between compelled speech and compelled silence, but, in the context of protected speech, the difference is without constitutional significance, for the First Amendment guarantees 'freedom of speech,' a term necessarily comprising the decision of both what to say and what *not* to say." *Id.* at 796–97. Similarly, the content-based speech requirement of SB 774 is subject to strict scrutiny.

**B. At a Minimum, SB 774 Should be Subjected to Exacting Scrutiny.**

Although Plaintiffs contend that strict scrutiny should be applied because SB 774 affects non-commercial, content-based compelled speech, at a minimum "exacting scrutiny" should be applied. Defendants have conceded as much:

> It is well-settled that "First Amendment challenges to disclosure requirements" are subject to "exacting scrutiny." *John Doe No. 1 v. Reed*, 561 U.S. 186, 196 (2010); *Buckley v. Valeo*, 424 U.S. 1, 64 (1976) ("We long have recognized that significant encroachments on First Amendment rights of the sort that compelled disclosure imposes ... must survive exacting scrutiny.") (citing *NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 461 (1958)); *Americans for Prosperity Found.*, [594 U.S. 595, 608 (2021)] ("Regardless of the type of association, compelled disclosure requirements are reviewed under exacting scrutiny."); *see Worley v. Florida Sec'y of State*, 717 F.3d 1238, 1245 (11th Cir. 2013) ("Florida's PAC regulations are subject to exacting scrutiny"); *see also id.* at 1251 ("Supreme Court and Circuit precedent has consistently upheld organizational and reporting requirements against facial challenges, in part because crafting such disclosure schemes is better left to the legislature") (quotations omitted).

[ECF No. 16 at 4]. In *NAACP*, *Buckley*, *Doe* and *Americans for Prosperity,* the Supreme Court evaluated disclosure requirements in the context of freedom of association rather than compelled, content-based speech. In *NAACP*, the NAACP argued that Alabama's compelled disclosure of its membership lists will "abridge the rights of its rank-and-file members to engage in lawful association in support of their common beliefs." 357 U.S. at 460. Determining that the freedom to

---

as "strict scrutiny." *See NIFLA*, 585 U.S. 756 (noting that the *Riley* Court "applied strict scrutiny to content-based laws that regulate ... professional fundraisers"); *McConnell v. FEC*, 540 U.S. 93, 140 (2003) (observing that *Riley* treated "solicitation restriction that required fundraisers to disclose particular information as a content-based regulation subject to strict scrutiny"). Even the dissent in *Riley* referred to the scrutiny applied by the majority of the Court as "strict scrutiny." 487 U.S. at 810 (Rehnquist, C.J., dissenting).

associate is an implicit unenumerated right, the Court proclaimed that the government's actions were subject to the "closest scrutiny" and that the government had a burden to prove that interest was "compelling." *Id.* at 460–61, 463. In so stating, the Court held that Alabama "has fallen short of showing a controlling justification for the deterrent effect on the free enjoyment of the right to associate which disclosure of membership lists is likely to have." *Id.* at 466.

In *Buckley*, litigants challenged the Federal Election Campaign Act's requirement that candidates and political committees disclose and report campaign contributions as violating their freedom of association. 424 U.S. at 62. Citing *NAACP*, the *Buckley* Court stated, "In several situations concerning the electoral process, the principle has been developed that restrictions on access to the electoral process must survive exacting scrutiny." *Id.* at 93–94. Notably, even in applying exacting scrutiny, the Court considered whether the disclosure requirements were narrowly tailored and were the least restrictive means of furthering the governmental interests. *Id.* at 68, 81.

In *Doe*, the sponsor of a petition and several signers sought to enjoin the secretary of state from publicly releasing any documents that would reveal the names and contact information of people who signed the petition, alleging that the Washington Public Records law was unconstitutional as applied to referendum petitions. 561 U.S. at 193. Importantly, the right-to-association challenge there was to the dissemination of the names and contact information by the Attorney General. Unlike here, where Plaintiffs are challenging a law requiring them to compute, compile, and disclose private financial information, which will then be published to the world, the *Doe* plaintiffs had challenged the dissemination of information that had been provided regarding the plaintiffs' affiliations with a particular group. *Id.* at 191–93

The most recent disclosure requirement challenge in the freedom of association context was *Americans for Prosperity*. There, several charities challenged on freedom of association grounds a California law that required them to disclose the names and addresses of major donors over $5,000. 594 U.S. at 141 S. Ct. at 601–03. The information was supposed to remain confidential, but the trial court found that there had been many leaks and that California could not ensure the confidentiality of donors' information.[7] *Id.* at 602–05. The plaintiffs asserted that their

---

[7] In contrast, the Form 6 compelled statements will automatically be available on the Internet for everyone's viewing pleasure. [ECF No. 56-27 at 27:3-8]; *see also Public Search Results, Florida Commission on Ethics Electronic Financial Disclosure Management System (EFDMS)*,

freedom of association had been unlawfully infringed when the law eliminated donors' anonymity, thereby making donors less likely to contribute and subject them to the risk of reprisals. *Id*. at 603.

The justices in *Americans for Prosperity* could not come to a majority agreement as to the applicable standard of scrutiny. One, Justice Thomas, indicated strict scrutiny should apply and that it was not satisfied, *id.* at 619; two (Justices Alito and Gorsuch) expressly declined to decide whether strict or exacting scrutiny applied because they found that neither would be satisfied, *id.* at 622–23; three (Chief Justice Roberts and Justices Kavanaugh and Barrett) found that exacting scrutiny applied and was not satisfied, *id*. at 607–08; and the remaining three (Justices Kagan, Sotomayor, and Breyer) dissented, stating that a flexible level of scrutiny should apply depending upon the burden on First Amendment rights and that the standard applicable in that case was satisfied, *id.* at 630–31. Thus, in *Americans for Prosperity*, a majority of Justices could not agree on what form of constitutional scrutiny would apply, although a majority did find that the standard would *at least* be what was labeled as "exacting scrutiny," if not strict scrutiny.

The Supreme Court's stance in *NAACP*, *Buckley*, *Doe* and *Americans for Prosperity* within the freedom of association context does not negate or otherwise diminish the applicability of *Riley*, *NIFLA*, and *Town of Gilbert* (or *Otto*) to the compelled speech claim here. Thus, even if, despite the case law, strict scrutiny is not applied,[8] then exacting scrutiny should apply.

## III. Summary Judgment Should be Granted to Plaintiffs Because Defendants Cannot Satisfy Either Strict or Exacting Scrutiny.

The differences between strict scrutiny and exacting scrutiny are marginal, at best. To survive strict scrutiny, the government must prove that the speech regulation was narrowly tailored and the least restrictive means to achieve a compelling governmental interest. To satisfy the exacting scrutiny standard from *Americans for Prosperity*, the government must show that there is "a substantial relation between the disclosure requirement and a sufficiently important

---

https://disclosure.floridaethics.gov/PublicSearch/FilingsResults?FormYear=2023&FormTypeCode=6%2C6F%2C6X&Filters=formYear%2CfirstName%2ClastName%2CorganizationName%2CformTypeCode (last visited Oct. 1, 2024).

[8] *Cf. Minnesota Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 875 (8th Cir. 2012) ("Allowing states to sidestep strict scrutiny by simply placing a 'disclosure' label on laws … risks transforming First Amendment jurisprudence into a legislative labeling exercise").

governmental interest." 594 U.S. at 607 (citing *Doe*, 561 U.S. at 196). The Supreme Court did not define what would be a "sufficiently important governmental interest." Rather, it appears that the level of important governmental interest would depend upon the burden on First Amendment rights: "To withstand this scrutiny, the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights." *Id*. Thus, depending upon the level of burden on First Amendment rights, the government interest may need to be (or be close to) the compelling interest required under strict scrutiny.[9]

The exacting scrutiny standard also requires a tighter fit than merely a substantial relationship:

> A substantial relation is necessary *but not sufficient* to ensure that the government adequately considers the potential for First Amendment harms before requiring that organizations reveal sensitive information about their members and supporters. Where exacting scrutiny applies, the challenged requirement must be *narrowly tailored* to the interest it promotes, even if it is not the least restrictive means of achieving that end.

*Id.* at 2384 (emphasis added). Thus, both a "substantial relation" and "narrow tailoring" are necessary to satisfy exacting scrutiny. Although the regulation does not necessarily have to be the

---

[9] The interest sought to be furthered by financial disclosure is to protect against the abuse of the public trust. The origin of the "full and public disclosure" required by Form 6 is Article II, Section 8, of the Florida Constitution: "A public office is a public trust. The people shall have the right to secure and sustain that trust against abuse. To assure this right: (a) All elected constitutional officers and candidates for such offices and, as may be determined by law, other public officers, candidates, and employees shall file full and public disclosure of their financial interests." Fla. Const., Art. II, § 8. Defendants, in fact, confirmed that "the overriding mission of the Commission on Ethics is to protect against the abuse of the public trust." [ECF No. 56-27 at 14:3–21]. Accordingly, Form 6 "is intended to assure the right against abuse of the public trust." *Id.* at 15:18–22; *see also id.* at 44:4–8 (acknowledging that "the reason that public officers are required to publicly disclose their financial interest is to avoid conflicts of interest"); [ECF No. 56-8 at 14]. In addition to the primary interest of protecting against abuse of the public trust by avoiding conflict of interest, financial disclosure has other impacts (such as bolstering confidence in government, reminding elected officials of ethics requirements, and educating the public), although these other interests are mere byproducts of the primary interest served by financial disclosure laws. [ECF No. 56-27 at 43–44]. For First Amendment scrutiny, the government must articulate that interest with *specificity* (here, protection from abuse of the public trust), rather than by abstract statements. *See Awad v. Ziriax*, 670 F.3d 1111, 1130 (10th Cir. 2012); *Complete Angler, LLC v. City of Clearwater*, 607 F. Supp. 2d 1326, 1334 (M.D. Fla. 2009). For purposes of this motion, Plaintiffs do not dispute that protecting against the abuse of the public trust is a compelling interest (under strict scrutiny) or a sufficiently important interest (under exacting scrutiny).

*least* restrictive means, the government is nonetheless *still obliged to consider less intrusive alternatives*. *Id.* at 2386 (stating that the government "is not free to enforce any disclosure regime that furthers its interests. It must instead demonstrate its need for universal production *in light of any less intrusive alternatives*" (citation omitted and emphasis added)); *see also Buckley*, 424 U.S. at 68 (pondering whether the law at issue was the least restrictive means of accomplishing the governmental interests at stake). Overall, the exacting scrutiny standard, which requires a "sufficiently important governmental interest," a "substantial relation," "narrow tailoring," and consideration of "less intrusive alternatives," is only marginally less demanding than strict scrutiny. *Am. for Prosperity*, 594 U.S. at 608–11, 613; *see also* [ECF No. 40 at 24].[10]

The law is well-settled that to pass any level of heightened constitutional scrutiny (including strict or exacting), the government must identify evidence *in the legislative record* supporting the enactment of the challenged law. *See, e.g.*, *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 822 (2000) ("No support for the restriction can be found in the near barren legislative record relevant to this provision. … [T]he Government must present more than anecdote and supposition. The question is whether an actual problem has been proved in this case. We agree that the Government has failed to establish a pervasive, nationwide problem justifying its nationwide daytime speech ban."); *Edenfield v. Fane*, 507 U.S. 761, 771 (1993) (invalidating law because no studies or evidence existed in legislative record and stating that "burden not satisfied by mere speculation or conjecture"); *Sable Commc'ns of Cali., Inc. v. FCC*, 492 U.S. 115, 129–30 (1989)

---

[10] The concepts of narrow tailoring and consideration of less restrictive alternatives are closely intertwined. *E.g., Boos v. Berry*, 485 U.S. 312, 329 (1988) (a law "is not narrowly tailored [where] a less restrictive alternative is readily available"). Thus, defendants must establish that the legislature "seriously undertook to address the problem with less intrusive tools readily available to it." *McCullen v. Coakley*, 573 U.S. 464, 494 (2014). Defendants have to prove that "alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." *Id.* at 495. Defendants "would have to show either that substantially less-restrictive alternatives were tried and failed, or that the alternatives were closely examined and ruled out for good reason." *Bruni v. City of Pittsburgh*, 824 F.3d 353, 370 (3d Cir. 2016); *see also Reynolds v. Middleton*, 779 F.3d 222, 231 (4th Cir. 2015) ("As the Court explained in *McCullen* … the burden of proving narrow tailoring requires the [government] to prove that it actually tried other methods to address the problem."); *Messina*, 546 F. Supp. 3d at 1251 (finding that the government's burden of establishing that it "seriously undertook to address the problem with less intrusive tools readily available to it" is not satisfied where "it points to no evidence that it investigated, studied, or even solicited reports on the issue").

("[A]side from conclusory statements during the debates by proponents of the bill, ... the congressional record presented to us contains no evidence as to how effective or ineffective the … regulations were or might prove to be."); *Buehrle v. City of Key West*, 813 F.3d 973, 978–79 (11th Cir. 2015) (stating, in the context of a content-neutral regulation of free speech, that "a municipality cannot get away with shoddy data or reasoning" and instead "must rely on at least some pre-enactment evidence that the regulation would serve its asserted interests"); *Messina v. City of Fort Lauderdale*, 546 F. Supp. 3d 1227, 1251 (S.D. Fla. 2021) (Altman, J.) ("[M]ore problematic[] is the lack of any evidence to justify the law. As we've suggested, that evidentiary lacuna seems to confirm the Plaintiffs' view that the City operated off of assumptions and didn't (as the Supreme Court requires) "seriously [endeavor] to address the problem with less intrusive tools readily available to it."); *see also Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 633 (2d Cir. 2020) (holding the government's demonstration of the least restrictive means prong of narrow tailoring "must be genuine, not hypothesized or invented *post hoc* in response to litigation") (quoting *United States v. Virginia*, 518 U.S. 515, 533 (1996)).

Here, the Court carefully reviewed the entire legislative record underlying the enactment of SB 774 prior to entering the Preliminary Injunction. [ECF No. 40 at 26]. The legislative record consisted of both House and Senate Legislative Staff Analyses, [ECF Nos. 56-10, 56-11, 56-12, 56-13, 56-14]; PSOF ¶¶ 1–5, and transcripts of all legislative hearings and debates on SB 774, [ECF Nos. 56-17, 56-18, 56-19, 56-20, 56-21]; PSOF ¶¶ 9–30. To ensure that the entire legislative record was before it, the Court at the conclusion of the April 22, 2024, hearing on the motion for preliminary injunction, "directed Defendants to file supplemental briefing regarding the specific evidence in the legislative record that Defendants purport establishes a relationship between Form 6's additional financial disclosure requirements and the compelling govern interests at stake." [ECF No. 40 at 14]. As the Court found in the Preliminary Injunction Order, "Notably, although the Court's directive with regard to the Supplemental Brief was for Defendants to provide studies, data, reports, or empirical evidence supporting the need for the heightened disclosure requirements of SB 774, the [Defendants'] Supplemental Brief includes none." [ECF No. 40 at 15].

As set forth in detail in the Plaintiffs' Statement of Material Facts, and as found by the Court in the Preliminary Injunction Order after its careful review of the legislative record, the Defendants are unable to demonstrate that there was evidence in the legislative record justifying the need for SB 774's heightened disclosure requirements (for example, by showing that the

disclosure requirements previously in place with Form 1 were not adequate), or that the State seriously undertook the consideration of less intrusive means to address the identified interests. [*See* ECF No. 40 at 25–26]; PSOF ¶¶ 3–5, 8, 10, 12–14, 19, 21–22. Not only were Defendants unable to point to such evidence in the legislative record, but neither could the Court:

> So, too, this Court's review of the various Committee meeting notes and Analyses and transcripts of hearings and debates in the Florida Senate and House of Representatives revealed none. The Analyses, while detailed and thorough, lack any evidence of a justification or reason for the change from Form 1 to Form 6 and lack any evidence that a less intrusive alternative was seriously considered. To the contrary, it is not at all clear from the legislative record that anyone had determined that Form 1 was not adequately addressing the State interests or, if it was not, that anyone gave any serious consideration to whether a less intrusive alternative to Form 6 might address the State's concerns.

[ECF No. 40 at 26]. The full legislative record was before the Court, and nothing has changed since. There is simply no evidence in the legislative record to satisfy the State's burden to justify SB 774.

In fact, the only empirical evidence in the Court's record—which was not in the legislative record—shows that the disclosures required under the Form 1 adequately protected against the abuse of the public trust by municipal elected officials. Defendants initially claimed that there was a "steady, upward trend" of the number of ethics complaints overall and against elected municipal officials. [ECF No. 16 at 7]. The true numbers, however, showed that was not correct. In fact, the total number of complaints had been in the same range each year, the total complaints in 2022 were actually less than in any of the prior three years, and the number of complaints against municipal officials in 2022 was *lower* than in any of the prior four years:

| **Year** | **Total Complaints** | **Municipal Complaints** |
|---|---|---|
| 2022[11] | 223 | 53 |
| 2021[12] | 238 | 72 |
| 2020[13] | 243 | 62 |
| 2019[14] | 231 | 84 |
| 2018[15] | 211 | 68 |

Moreover, the numbers for 2022 further showed that although State and County elected officials filed Form 6, the percentage of them that had complaints filed against them were 5.83% and 5.29%, respectively. In contrast, for municipal elected officials filing Form 1, the percentage that had complaints filed against them was 2.41%.

**2022**

| **Category** | **Complaints**[16] | **Total Filed**[17] | **Percent** |
|---|---|---|---|
| State Elected | 12 | 206 | 5.83% |
| County Elected | 36 | 681 | 5.29% |
| Municipal Elected | 53 | 2200 | 2.41% |

All told, Defendants have not demonstrated, and cannot demonstrate, any relationship, let alone a substantial relationship, between the requirements of Form 6 (forcing elected municipal officials to state the *amount* of their net worth, *amount* of income, *value* of household goods, *value*

---

[11] [ECF No. 56-7 at 9].

[12] [ECF No. 56-6 at 9].

[13] [ECF No. 56-5 at 10].

[14] [ECF No. 56-4 at 9].

[15] [ECF No. 56-3 at 9].

[16] [ECF No. 56-7 at 9].

[17] [ECF No. 56 ¶¶ 10–12].

of every asset and *amount* of every liability) and protecting from the abuse of the public trust.[18] Specifically:

- Neither the Florida Legislature nor the Commission on Ethics relied upon any expert studies, empirical examples, analysis or research that would justify SB 774. [ECF No. 56-27 at 92:9–13, 94:13–95:22, 159:3–8]; PSOF ¶¶ 4, 8, 10, 22, 27.
- SB 774 itself contained no factual findings. [ECF No. 56-22].
- The Commission on Ethics does not look at financial disclosure forms when they are filed. [ECF No. 56-27 at 12–15, 26]. Neither the Commission on Ethics nor the Florida Legislature discussed disclosure forms utilized by other states prior to the enactment of SB 774. PSOF ¶¶ 4, 8, 10, 22, 27.
- Neither the Commission on Ethics nor the Florida Legislature considered adopting a disclosure form less demanding than a Form 6 before enacting SB 774. PSOF ¶¶ 3–5, 8, 10, 12–14, 19, 21–22.
- The amount of net worth, income, household goods, assets and liabilities are not elements of any ethics violations. [ECF No. 56-27 at 95:23–96:4, 97:22–98:1, 100:9–13, 108:2–8, 150:1–5, 150:23–151:13, 152:13–155:20].

Because the legislative record is devoid of any evidence showing that SB 774 is substantially related to the prevention of the abuse of public trust, that the disclosures required under Form 1 were not adequate, and that the Florida Legislature considered less restrictive alternatives, Defendants cannot carry their burden of proving under either exacting or strict scrutiny that SB 774 is justified under the First Amendment.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court grant summary judgment in their favor, declare that the portions of SB 774 that require municipal elected officials and candidates to file a Form 6 rather than a Form 1 violate the First Amendment to the United States Constitution and therefore are invalid, permanently enjoin Defendants (along with their officers, agents, employees, attorneys, and all other persons in active concert or participation with them) from enforcing that portion of SB 774, reserve jurisdiction to consider the award of cost and expenses (including attorney's fees) to Defendants pursuant to 28 U.S.C. § 1920 and 42 U.S.C. § 1988, and award any other relief that the Court deems just and proper.

[18] There may be a relationship between *sources* (not amount) of income and *identification* (not value or amount) of assets and liabilities (as shown on the Form 1) and some conflict of interest laws, but those disclosures in Form 1 are not challenged by Plaintiffs in this action.

Dated: October 11, 2024

WEISS SEROTA HELFMAN
COLE + BIERMAN P.L.
200 East Broward Blvd., Ste. 1900
Fort Lauderdale, FL 33301
Telephone: (954) 763-4242
Facsimile: (954) 764-7770

By: */s/ Jamie A. Cole*
JAMIE A. COLE
Florida Bar No. 767573
jcole@wsh-law.com
msaraff@wsh-law.com
EDWARD G. GUEDES
Florida Bar No. 768103
eguedes@wsh-law.com
szavala@wsh-law.com
ANNE R. FLANIGAN
Florida Bar No. 113889
aflanigan@wsh-law.com
JEREMY S. ROSNER
Florida Bar No. 1018158
jrosner@wsh-law.com
kdoyle@wsh-law.com

*Counsel for Plaintiffs*