**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

PRESIDENT OF TOWN COUNCIL
ELIZABETH A. LOPER, elected official
of the Town of Briny Breezes, et al.,

      Plaintiffs,

v.                                    Case No.: 1:24-CV-20604

ASHLEY LUKIS, in her official capacity
As Chair of the Florida Commission
on Ethics, et al.

      Defendants.

_____/

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Defendants hereby move for summary judgment and in support state:

**INTRODUCTION AND BACKGROUND**

In 1976, Florida voters enacted the Sunshine Amendment which, for the first time, required elected constitutional officers and candidates for those offices, to publicly disclose specified financial information. Governor Askew championed the amendment "to help restore dignity to public offices" because "only a people who have confidence in their leaders and in their government will be able to confront all the many problems we face." ECF No. 56, Exhibit 28 at 5. The voters of Florida approved the Sunshine Amendment by a margin of 80%. *Plante v. Gonzalez*, 575

F.2d 1119, 1122 (5th Cir. 1978).[1]  It was enshrined in the Florida Constitution as Article II, Section 8, and codified, in part, at section 112.3144, Florida Statutes. ECF No. 56 at ¶ 3. The amendment requires elected constitutional officers file "full and public disclosure of their financial interests." Art. II, § 8(a), Fla. Const.[2]

In 2023, as authorized by the Sunshine Amendment,[3] the Florida Legislature voted to extend the foregoing public benefits of the Amendment to specified municipal elected officials by requiring those officials to meet the same financial disclosure standards as their state and county colleagues. ECF No. 56 at ¶ 6.  In response, a large number of those officials have sued and argue that the Form 6 requirement "compels Plaintiffs to engage in content-based, noncommercial speech in violation of the First Amendment of the United States Constitution and is,

---

[1] 1,765,626 in favor, 461,940 opposed.

[2] "[F]ull and public disclosure of their financial interests" is defined as:
    a sworn statement showing net worth and identifying each asset and liability in excess of $1,000 and its value together with one of the following:
    a. A copy of the person's most recent federal income tax return; or
    b. A sworn statement which identifies each separate source and amount of income which exceeds $1,000.

[3] Art. II, § 8(a) requires that the financial disclosures be filed by "[a]ll elected constitutional officers and candidates for such offices and, *as may be determined by law, other public officers, candidates, and employees*." (emphasis added). Section 112.3144(d) and (e), Florida Statutes, also provides:

(d) Beginning January 1, 2024, the following local officers must comply with the financial disclosure requirements of s.8, Art. II of the State Constitution and this section: 1. Mayors. 2. Elected members of the governing body of a municipality.

(e) Beginning January 1, 2024, each member of the Commission on Ethics must comply with the financial disclosure requirements of s. 8, Art. II of the State Constitution and this section.

therefore, unconstitutional." ECF No. 1 at 17. As there is no constitutional or other basis for according municipal elected officials any differential treatment when it comes to financial disclosure, this Court should enter summary judgment in favor of Defendants.

## **ARGUMENT**

### I.     **This case is controlled by _Plante v. Gonzalez._**

In its order granting preliminary injunction, the Court found that "where, as here, a law compels disclosure of financial information the speakers would not otherwise have disclosed, the law burdens speech and does fall within the purview of the First Amendment." ECF No. 40 at 21. Defendants respectfully disagree and contend that the issue of financial disclosure requirements imposed on elected officials and candidates for such offices is properly considered under the constitutional right to privacy as the former Fifth Circuit did in the _Plante_ case.

_Plante v. Gonzales,_ 575 F.2d 1119 (5th Cir. 1978), was a challenge to the Sunshine Amendment filed by five state senators shortly before it was to go into effect. _Id._ at 1123.  The senators alleged that public disclosure of their personal financial information violates their federal right to privacy. _Id._ at 1124. The court first held that the right to run for office was not a fundamental right and that the Sunshine Amendment did not unconstitutionally burden that right, noting that "[d]isclosure requirements may deter some people from seeking office," but "[a]s

3

the Supreme Court has made clear, however, mere deterrence is not sufficient for a successful constitutional attack." *Id.* at 1126 (citing *Bullock v. Carter,* 405 U.S. 134, 142-143 (1972)).

Turning to privacy, the court analyzed the Sunshine Amendment under the confidentiality strand of the right to privacy, which is "the individual interest in avoiding disclosure of personal matters." *Id.* at 1132  (citing *Whalen v. Roe*, 429 U.S. 589 (1977). In doing so, the Fifth Circuit rejected the application of heightened scrutiny under the First Amendment to the Sunshine Amendment's financial disclosure requirements. *Plante*, 575 F.2d at 1132–33. The court concluded that required "disclosure of assets, debts, and sources of income, each to be identified and valued" did not facially "implicate first amendment freedoms." *Id.*

While the *Plante* court left open the possibility that "rigorous application" of the disclosure requirements "might implicate first amendment freedoms" if it forced public officials to reveal "memberships, associations, and beliefs" more than "tangentially," *id.*, Plaintiffs do not make such an allegation here.[4] Plaintiffs claim instead that the law is subject to strict scrutiny under the First Amendment simply

---

[4] Nor have they identified any case in which a court found that "rigorous application" of the Sunshine Amendment has implicated the First Amendment.

because it requires financial disclosure—a position the court in *Plante* rejected.[5]

Applying *Plante*, Plaintiffs are not entitled to relief from this Court.

**II.   Financial disclosures by elected public officials are not private speech and thus not protected by the First Amendment.**

Plaintiffs' entire case is based on the proposition that any information that elected officials and candidates for elective office are required to provide on a Form 6 constitutes compelled speech. *See* ECF No. 1 at ¶ 51 ("[t]he statements required by Fla. Stat. § 112.3144, through Form 6, constitute noncommercial, compelled speech from Plaintiffs in violation of the First Amendment"). Under this theory, any personal factual information required to be provided by a government employee or prospective employee constitutes content-based compelled speech and must survive strict scrutiny. Plaintiff has yet to provide support for their novel theory.

To support their compelled speech/strict scrutiny argument in their preliminary injunction motion, (ECF 10), Plaintiffs relied on cases that involved purely *private* actors who claimed they were compelled to speak a government message. *See* ECF No. 56, Ex. 29 at 11:6-7 (stating that *Nat'l Inst. Of Family & Life Advocates v. Becerra*, 585 U.S. 755, 766 (2018)[6] and *Riley v. Nat'l Fed'n of the*

---

[5] The *Plante* court also noted that "subjecting financial disclosure laws to the same scrutiny accorded laws impinging on autonomy rights, such as marriage, contraception, and abortion, would draw into question many common forms of regulation, involving disclosure to the public and disclosure to government bodies. *Plante,* 575 F.2d at 1134.

[6] *Becerra* concerned a California law that required licensed pregnancy-related clinics to disseminate notice advising patients of the availability of publicly-funded family-planning

*Blind of N. Carolina, Inc.*, 487 U.S. 781, 797-98 (1988)[7] are "directly on point"). But purely private actors enjoy the very highest levels of First Amendment protection. In those cases, the First Amendment works both ways – private actors have both "the right to speak freely and the right to refrain from speaking at all." *McClendon v. Long*, 22 F.4th 1330, 1336 (11th Cir. 2022) (quoting *Wooley v. Maynard*, 430 U.S. 705, 714 (1977)). Unsurprisingly, government action that imposes on those protections is generally subject to strict, or in some cases exacting, scrutiny. *Id*. at 1377-38.

That analysis cannot be applied here because Plaintiffs simply are not private actors. They are municipal elected officials. In the First Amendment context, they are government employees, employed by those who elected them. Government employees' speech is subject to an entirely different analysis. *Waters v. Churchill*, 511 U.S. 661, 672 (1994) ("[M]any of the *most fundamental maxims* of [the Supreme Court's] First Amendment jurisprudence *cannot reasonably be applied to speech by government employees*."); *see also*, *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006).

"When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Garcetti*, 547 U.S. at 418.

---

services, including contraception and abortions, and requiring unlicensed pregnancy-related clinics to disseminate notice stating that they were not licensed.

[7] In *Riley,* the law at issue required professional fundraisers to directly disclose to potential donors the average percentage of gross receipts actually turned over to charities by the fundraiser for all charitable solicitations conducted in the State within the previous 12 months.

Government employees' speech is protected when they speak "as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). However, if a government employee engages in speech pursuant to their official duties, that speech is not protected by the First Amendment. *Garcetti*, 547 U.S. at 421. Plaintiffs "are not ordinary citizens, but [municipal elected officials], people who have chosen to run for office." *Plante,* 575 F.2d at 1135. The State may thus control speech made pursuant to their official duties.

The analysis in *Garcetti* is instructive. In that case, an assistant district attorney wrote a memorandum expressing concerns about the accuracy of an affidavit used to get a search warrant and recommending dismissal of the prosecution. *Garcetti*, 547 U.S. at 414. He was then subjected to a number of allegedly retaliatory actions and sued arguing that his First Amendment rights had been violated. *Id.* The Supreme Court rejected the First Amendment claim because the assistant district attorney was a public employee and the memorandum was written pursuant to his official duties. *Id.* at 421–22. Under *Garcetti*, speech made by public employees pursuant to their official duties is categorically unprotected because "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id.*

So just like the State can make an assistant district attorney say or not say things pursuant to his official duties, the State can make Plaintiffs say things pursuant to their official duties as public officials in the State. Financial disclosure is simply part of the official duties attendant to serving as a public official in the State of Florida. Filing a Form 6 disclosure is a statutory requirement for elected municipal officials. Fla. Stat. § 112.3144(1)(d). If any speech could be considered the *definition* of speech pursuant to one's official duties, this is it. If Plaintiffs were not government officers or employees, SB 774 would not require them to file a Form 6. Under this standard, the Form 6 disclosure requirement does not implicate protected speech, and Plaintiffs' claim unquestionably fails.

### III.   Even if private speech, financial disclosure by public officials may still be compelled under *Pickering v. Board of Education*.

Even if the financial disclosures required of Plaintiffs were somehow private speech rather than speech made pursuant to their official duties, there would still be no First Amendment violation. The State has "broad discretion to restrict" even private speech "when it acts in its role as employer." *Garcetti*, 547 U.S. at 418.

That principle is not unlimited. The Supreme Court has adopted a test to determine whether government entities are impermissibly "leverag[ing] the employment relationship" to unduly restrict the ability of public officials to speak about matters of public concern. *Id.* at 419. That inquiry—known as the *Pickering* test—requires assessing first whether the employee speech in question is made as a

private citizen "on a matter of public concern." *Id.* at 418. "If the answer is no," then the First Amendment does not apply. *Id.* "If the answer is yes," the court must next determine whether the State has "an adequate justification for treating the employee differently from any other member of the general public." *Id.* If not, then the public official may have a First Amendment claim, but if so, then there is no claim. *Id.* The government may exercise some control over its employees' private speech on matters of public concern when doing so is "necessary for [the government] to operate efficiently and effectively. *Id.* at 419.

As explained above, Plaintiffs are not speaking as private citizens but as public officials when they submit a Form 6. And even if they were speaking as private citizens, the rote factual information required by Form 6 does not compel Plaintiffs to take any position about a "matter of public concern." For both of those reasons, their claim fails at the first step of *Pickering*. But even if by filing a Form 6, Plaintiffs could be said to be speaking as private citizens on a matter of public concern, they would still lose at step 2 of *Pickering*. The State's justification for treating local elected officials "differently from any other member of the general public" for purposes of financial disclosure is self-evident. The State has no interest in the personal finances of the typical member of the public but very much has an interest in the finances of the individuals who wield power in the name of the State. Obtaining that information is necessary for the government to operate "effectively"

because it is necessary to guard against corruption and conflicts of interest. So just like the government may compel judges to disclose gifts received, the State may compel Plaintiffs to disclose their personal financial information as a condition of serving as a public official in the State.

**IV.** **If the First Amendment were implicated, Plaintiffs' claim would fail under a commercial speech analysis.**

      **a. The *Zauderer* analysis applies to this case.**

Even if this Court concludes that Plaintiffs' claim implicates the First Amendment, the commercial speech/compelled disclosure analysis is much more akin to the facts of this case than the traditional compelled speech analysis that applies to private citizens. *See generally*, *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 650-51 (1985). In *Zauderer*, the Supreme Court held that "an advertiser's rights are adequately protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers." *Id*. at 651. This context is analogous to the rights of government officials as they "advertise" their services to the public in the form of a campaign. And just as the State has an interest in preventing the deception of consumers in a commercial setting; in the election setting, the State has an arguably *greater* interest in preventing the deception of the voting public.

In *Zauderer*, the Court pointed out that the State did not restrict the plaintiff's speech; rather, it "required [him] to provide somewhat more information than [he] might otherwise be inclined to present." *Id*. The Court then distinguished several of the traditional compelled speech cases,[8] because in those cases, the government attempted to "prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion" and "force citizens to confess by word or act their faith therein." *Zauderer*, 471 U.S. at 651. While the government action in *Zauderer* prescribed only "what shall be orthodox in commercial advertising," and merely required the plaintiff to "include in his advertising *purely factual and uncontroversial information* about the terms under which his services [would] be available." *Id*. at 651. Furthermore, because commercial speech enjoys protection from restriction based on its "value to consumers," the plaintiff's "constitutionally protected interest in *not* providing any particular factual information . . . [was] minimal."

In this case, SB 774 simply requires Plaintiffs to disclose more information than they might otherwise be inclined to present. The State is prescribing "what shall be orthodox" in a transparent government and requires Plaintiffs to disclose "purely factual and uncontroversial information" about their finances in furtherance of a

---

[8] *Id*. at 651 (distinguishing *Wooley v. Maynard*, 430 U.S. 705 (1977), *Miami Herald Publishing Company v. Tornillo*, 418 U.S. 241 (1974), and *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943)).

legitimate government interest.  And even further, the protection of government employees' speech from restriction (in commenting on matters of public concern) is based on that speech's value to the public. *Garcetti*, 547 U.S. at 419 ("The Court has acknowledged the importance of promoting the public's interest in receiving the well-informed views of government employees engaging in civic discussion."). Therefore, in this case, just as in *Zauderer*, any constitutionally protected interest the Plaintiffs have in *not* providing the information required by Form 6 is minimal.

### b.  SB 774 survives constitutional scrutiny.

If this Court finds that the First Amendment is implicated, it should apply the same level of constitutional scrutiny that was applied in *Zauderer*. Under *Zauderer*, a law need only be "reasonably related to the State's interest" to survive. *Zauderer*, 471 U.S. at 651.  However, Defendants respectfully submit that SB 774 survives any level of constitutional scrutiny – including strict or exacting scrutiny.

Form 6 has long been a tool used to achieve greater government transparency and boost public confidence in elected officials.  In scrutinizing these state interests, the Court need not constrain itself to any explicit statement by the Legislature. *See, e.g.*, *Burson v. Freeman*, 504 U.S. 191, 211 (1992). While the law at issue in *Burson* was judged against the higher bar of strict scrutiny, it remains informative in the instant case. In *Burson*, the court relied on "history, a substantial consensus, and simple common sense" to find that the government had sufficiently shown that the

law was necessary to serve its compelling state interests. *Id*. at 210. Although SB 774 is subject to a much lower level of constitutional scrutiny, the Court should still look to *Burson* in concluding that it may fully rely on the long history that culminated in the passage of SB 774 – i.e., the history of development, passage, and implementation of the Sunshine Amendment in concluding not only that SB 774 serves multiple state interests, but also that SB 774 is reasonably related to those interests.

The Southern District, in considering the use of *Burson* in a First Amendment challenge to lobbying restrictions, previously noted that "a demonstrated history of lobbying restrictions would constitute evidence that such laws are effective in addressing the problem of corruption." *Garcia v. Stillman*, 661 F. Supp. 3d 1168, 1183 (S.D. Fla. 2023). In the same manner, a demonstrated history of financial disclosure laws constitutes evidence that such laws are effective in addressing the State's interests in preventing corruption, bolstering public confidence in government, promoting voter knowledge, and positively shaping the political community in Florida. Particularly where, as in the instant case, the demonstrated history is not just of financial disclosures generally, but specifically of financial disclosure of the exact same material and in the exact same form as is now required of Plaintiffs.

Just as *Burson* was unique, this case is as well. SB 774 represents a measured expansion of long-existing financial disclosure requirements that were first introduced with the Sunshine Amendment by popular vote of the people of the State of Florida. Even further, Florida by no means stands alone in determining financial disclosure to be a necessary element of functioning government.[9] Indeed, SB 774 cannot even be said to be the first enactment that subjects municipal officials in Florida to public disclosure of net worth.[10] The ample and precise historical comparator of the long-time operation of the *exact same* disclosure requirements make this case the quintessential case for reliance on "common sense." *Burson*, 504 U.S. at 211.

The direct connection between SB 774 and the Sunshine Amendment is undeniable. ECF No. 19 at ¶¶ 3-6. As a result, the state interests that underlaid the Sunshine Amendment are the same state interests that support SB 774. That the benefits of the Sunshine Amendment have so achieved ubiquity in Florida political life that the legislature does not spend time rehashing them fully in staff analyses, committee, or floor debate should not dissuade this Court from the commonsense

---

[9] *See generally, e.g.*, *Validity and Construction of Orders and Enactments Requiring Public Officers and Employees, or Candidates for Office, to Disclose Financial Condition, Interests, or Relationships* (1983), 22 A.L.R. 4th 237 (collecting and discussing cases which have considered the myriad financial disclosure requirements for various public officers throughout the United States prior to 1983).

[10] Tampa, Fla., Code of Ordinances § 2-501 (Municode through Ordinance No. 2003-255, enacted October 2, 2003), https://library.municode.com/fl/tampa/codes/code_of_ordinances (from menu bar, select "Chapter 2 Administration," then select "Article VIII City of Tampa Ethics Code").

conclusion that an expansion of a financial disclosure law is supported by the same interests as the original law.

Every governmental interest that is evident from the history of the Sunshine Amendment continues to underly legislative expansions of the Amendment. ECF No. 56, Ex. 28 at 15. ("It is possible that the legislature, in accordance with the Amendment, may actually broaden and strengthen its application. The Sunshine Amendment is not viewed by its supporters as being beyond improvement. It is hoped it will be a foundation for further efforts to promote ethics in government in the years ahead.").

To the extent the Court is concerned that the government interests that underlaid the Sunshine Amendment are somehow rendered inapplicable here because Plaintiffs do not occupy the exact positions as those historically covered by the Amendment, it is helpful to consider the actual nature of Plaintiffs' government positions in comparison to those who have historically, constitutionally been required to file a Form 6.[11] Like the elected constitutional officers in the Sunshine Amendment, Plaintiffs are elected officials. Like the elected constitutional officers

---

[11] *See* § 166.021(1), Fla. Stat. ("municipalities shall have the governmental, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions, and render municipal services, and may exercise any power for municipal purposes, except when expressly prohibited by law."); § 166.021(3) ("[t]he Legislature recognizes that pursuant to the grant of power set forth in s. 2(b), Art. VIII of the State Constitution, the legislative body of each municipality has the power to enact legislation concerning any subject matter upon which the state Legislature may act" (and providing four exceptions)).

in the Sunshine Amendment, Plaintiffs wield the purse strings within their jurisdictions, and can direct spending of funds collected from citizens of the municipalities they control. Neither the scale of Plaintiffs' salaries, the number of hours they work, nor the size of the constituency they serve, has any effect on the reality that the office *they sought*, and now hold, bears all the same traditional responsibilities of government as those that were required to file a Form 6 long before the passage of SB 774.

With respect to the relative weight underlying the important government interests that support SB 774, the Sunshine Amendment's history is again informative. SB 774 does not, and was never intended to, stand alone. It may be properly considered an expansion of the Sunshine Amendment. Such an expansion was anticipated from the origin of the Amendment. *See* Art. II, § 8(a) ("All elected constitutional officers and candidates for such offices *and, as may be determined by law, other public officers, candidates, and employees* shall file full and public disclosure of their financial interests.") (emphasis added). Accordingly, the circumstances of the passage of the Sunshine Amendment are instructive here.

The Sunshine Amendment was the result of an initiative petition originated by Governor Askew. *Williams v. Smith*, 360 So.2d 417, 418-19 (Fla. 1978) (discussing the Sunshine Amendment and "the Governor who caused the amendment to be drafted and the petitions prepared."). It was put to a popular vote

16

before the people of Florida, the same people served by the proffered interests underlying the amendment. The people of Florida responded by overwhelmingly approving the Sunshine Amendment with 79.3% of the vote. *Plante,* 575 F.2d at 1122.

In the same vein, it should be noted that another recent proposed constitutional amendment that received comparable levels of support was also a government ethics amendment that applied to elected municipal officers. *Garcia v. Stillman*, 661 F.Supp.3d 1168, 1174-75 (S.D. Fla. 2023) ("[O]n November 6, 2018, [] 78.9% of Floridians voted in favor of a ballot initiative entitled Lobbying and Abuse of Office by Public Officers."). The tremendous expression of support from the people of Florida at the ballot box for full and public financial disclosures is the best evidence possible for the strength and significance of the governmental interests served by the Sunshine Amendment, and by extension SB 774. The people of Florida know best how to secure their own trust, and in weighing the government's interests this Court should not ignore more than 1.7 million Floridians stepping onto the scale.

1. Bolstering of public confidence in government officials

The first important governmental interest in the Form 6 financial disclosure requirements is the bolstering of public confidence in government officials by transparency. The bolstering of public confidence in government officials persists separately and independently of the interest in actually preventing conflicts of

interest or fraud.  *See Plante,* 575 F.2d at 1134 (finding Sunshine Amendment financial disclosures were related to and significantly promoted a specific interest in boosting public confidence in government because, "[d]isclosure may not completely remove this doubt. It should help, however. And more effective methods are not obvious").

The importance of this governmental interest with respect to SB 774 originates inevitably from the history of the Sunshine Amendment. "The question is not whether the public officials are honest. The question is whether the people believe they are honest and whether the people believe their officials are representing the public interest. The Sunshine Amendment can provide the reassurances that the people need and the times demand." ECF No. 56, Ex. 28 at 16; *see also* ECF No. 56, Ex. 28 at 5-6. That the Sunshine Amendment's financial disclosure laws would actually bolster the public's trust in government is supported by that same public's widespread support for it.  The will of the people of Florida expressed in the voting booth is certainly entitled to as much if not more significance in the context of a constitutional amendment than the legislative record when reviewing a state statute.

2. <u>Promotion of Voter Knowledge</u>

The Second important governmental interest advanced by SB 774 has been characterized as the public's "right to know." *Plante*, 575 F.2d at 1134-35. Form 6 financial disclosures are necessary for an informed electorate "because it makes

voters better able to judge their elected officials and candidates for those positions." *Id.* at 1135. As the court in *Plante* noted, "It is relevant to the voters to know what financial interests the candidates have." *Id.* This important governmental interest plainly hinges on the elected nature of the official. Because Plaintiffs are also elected officials invested with legislative authority within city limits,[12] this governmental interest applies with full and equal force as would support the same financial disclosures for elected constitutional officers that have long been the standard in Florida. "This educational feature of the [SB 774] serves one of the most legitimate state interests: it improves the electoral process. That goal… can be met in no other way." *Id.* at 1137. In light of the history of the Sunshine Amendment, plain common sense militates in favor of a weighty governmental interest in a fully informed electorate in the instant case as well.

3. The State's interest in its political community

The Supreme Court has long recognized a state's interest "in limiting participation in [] government to those who are within the basic conception of a political community. [The Court] recognize, too, the State's broad power to define its political community." *Sugarman v. Dougall*, 413 U.S. 634, 642-43 (1973). SB 774 operates, as an extension of the Sunshine Amendment, to define Florida's political community as transparent, trustworthy, and ethics focused.

---

[12] *See supra*, footnote 11.

Again, this governmental interest is derived from the history of the Sunshine Amendment. Governor Askew did not anticipate that the Sunshine Amendment would be an immediate panacea to all of Floridian's concerns regarding their government, rather he recognized that "a constitution must be a statement of broad principle[.]" *Williams v. Smith*, 360 So.2d 417, 419 (Fla. 1978) (quoting Governor Askew's address to the joint session of the Florida Legislature on April 5, 1977). Governor Askew, and all the Floridians who supported the Sunshine Amendment, further understood that the Sunshine Amendment "will be a foundation for further efforts to promote ethics in government in the years ahead." ECF No. 56, Ex. 28 at 15.

That full and public financial disclosures did meaningfully shift the political community of Florida is evidenced by the very law Plaintiffs now challenge. While the Sunshine Amendment had to be passed by the initiative process because the statutory disclosure law already in existence was insufficient,[13] SB 774 extended the Sunshine Amendment via an act of the Legislature. Plainly, Governor Askew foresaw that once the Sunshine Amendment passed, "[p]olitical reality and political responsibility will combine to compel the Legislature to substantially implement the Amendment as adopted. It is possible that the Legislature, in accordance with the Amendment, may actually broaden and strengthen its application." ECF No. 56, Ex.

---

[13] ECF No. 56, Ex. 28 at 10, 12.

28 at 15. This governmental interest now fully supports SB 774 as Florida attempts to maintain steam and continue to define and refine its political community to be, from the ground up, transparent and ethics focused.

### 4. Deterrence of Corruption and Conflicts

Protecting public offices against abuse is plainly an important government interest, Plaintiffs agree. ECF No. 18 at 7. Full and public financial disclosure has long been understood to "discourage corruption" in Florida by its mere existence. *Plante*, 575 F.2d at 1135. "The interest in an honest administration is so strong that even small advances are important." *Id.* SB 774 represents just such a small and targeted advance. Just as the disclosures in *Plante* would at least discourage some corruption, so too will the same disclosures when applied to Plaintiffs.

As already thoroughly discussed in Defendants' prior briefing, ECF Nos. 15 and 16, municipal elected officials make up a substantial portion of complaints made to the Commission on Ethics every year[14] to the point that the Commission and the Legislature independently developed the idea that individuals occupying offices like those of Plaintiffs should be subject to the full and public disclosure required by the Sunshine Amendment. ECF No. 17-1 at 156:7-21. This is exactly the operation of the Sunshine Amendment Governor Askew anticipated when he predicted that "the

---

[14] In 2022, for example, municipal elected officials made up 23 percent of complaints to the Commission. ECF No. 56, Ex. 7 at 13.

Legislature will respect the expressed desires of the vast majority of Florida voters and move in good faith, to further extend the Amendment." *Williams*, 360 So.2d at 419 (quoting Governor Askew's address to the joint session of the Legislature on April 5, 1977, as "[p]erhaps the most obvious expression of framers' intent[.]"). That the Commission on Ethics independently reached the same conclusion as the Legislature only further solidifies the commonsense conclusion that for all the same reasons the Form 6 financial disclosures applied to many other elected government officials, they should also apply to Plaintiffs.

The essential decision remaining for the Court is a determination of whether SB 774 is "reasonably related" to all of these government interests. In the instant case SB 774 is supported by multiple substantial governmental interests. Form 6 financial disclosures plainly have a demonstrated history in Florida as to "constitute evidence that such laws are effective in addressing the problem of corruption." Garcia, 661 F.Supp.3d at 1183 (citing *Burson v. Freeman*, 504 U.S. 191 (1992)).

The long history of Form 6 financial disclosures in Florida and the history of the development and passage of the Sunshine Amendment that preceded it sufficiently support all of the State's proffered governmental interests. That history demonstrates not only why the Sunshine Amendment's financial disclosure requirements are constitutional with respect to the myriad public officials it has applied to over almost fifty years of Sunshine in Florida, but also with respect to the

new expansion to Plaintiffs by SB 774. This Court has before it the perfect comparator to SB 774 in the historical application of the Sunshine Amendment's exact same disclosure requirements to other government officials. The Court can see that the anticipated benefits of the Sunshine Amendment came to pass.

Further, the Court can see that the old fears that have been used to argue against financial disclosures since Governor Askew first put the Sunshine Amendment forward simply have not come to pass. Although opponents of full and public financial disclosure have long raised anxieties about kidnapping and blackmail,[15] the State is not aware of a single instance in which a Form 6 filer was subject to a kidnapping or attempted kidnapping, been blackmailed, or been a victim of identity theft as a result of the filing of a Form 6 in all of its history, nor have Plaintiffs brought any such instances to the attention of the Court. Although opponents to the Sunshine Amendment suggested it would discourage people from participating in government,[16] the State of Florida has managed to continue to find candidates willing to comport to the expectations of their constituents. The Legislature has not undermined or retreated from the Form 6 requirements as was worried about. ECF No. 56, Ex. 28 at 15. Rather, the historical record reflects that

---

[15] ECF No. 56, Ex. 28 at 16.
[16] ECF No. 56, Ex. 28 at 14.

the full and public financial disclosure facilitated by Form 6 has operated in Florida for nearly half a century.

After well over four decades of observing the Sunshine Amendment's successful operation, the Legislature and the Commission on Ethics both came to the commonsense conclusion that a targeted expansion was in order. That expansion was targeted at Plaintiffs for the same reasons the original, successful Sunshine Amendment has remained targeted at the officials it has been, it works. Notably as well, the weighty government interests of this case are weighed against Plaintiffs' "actual burden" on their First Amendment Rights. *John Doe No.*, 561 U.S. at 196. As argued in the first section of this briefing, it is unclear that Plaintiffs' First Amendment rights have been burdened at all. Even were this Court to find some burden to Plaintiffs' First Amendment rights, this is the rare case where "history, a substantial consensus, and simply common sense," *Burson*, 504 U.S. at 211, are sufficient for this Court to find that the proffered governmental interests reflect and overcome any actual burdens on Plaintiffs' First Amendment rights.

## CONCLUSION

For all of the foregoing reasons, there is no genuine dispute as to any undisputed fact and Defendants are entitled to judgment as a matter of law. Defendants therefore respectfully request that this Court grant summary judgment in their favor.

Respectfully submitted,

**ASHLEY MOODY**
**ATTORNEY GENERAL**

*/s/  Sara E. Spears*
Sara E. Spears (FBN 1054270)
ASSISTANT ATTORNEY GENERAL
William H. Stafford III (FBN 70394)
SPECIAL COUNSEL
Complex Litigation Division
Office of the Attorney General
PL-01 The Capitol
Tallahassee, FL 32399-1050
sara.spears@myfloridalegal.com
william.stafford@myfloridalegal.com
Complexlitigation.eservice@myfloridalegal.com
850-414-3300

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of October 2024 a copy of this document was filed electronically through the CM/ECF system and furnished by email to all counsel of record.

*/s/ Sara E. Spears*
Sara E. Spears

25